## In re ROCHFORD et al.

### (Circuit Court of Appeals, Eighth Circuit.  July 14, 1903.)

### No. 33.

1. BANKRUPTCY—JURISDICTION OF DISTRICT COURTS AND CIRCUIT COURTS—CON-
TROVERSIES OVER PROPERTY HELD BY ADVERSE CLAIMANTS.

   The District Court sitting in bankruptcy has no jurisdiction over a con-
   troversy between trustees in bankruptcy and an adverse claimant relating
   to the title or possession of property in the custody of the latter, in the
   absence of his consent, but such an issue is a controversy at law or in
   equity, as distinguished from a proceeding in bankruptcy, within the
   meaning of section 23 of the bankrupt act of July 1, 1898, c. 541, 30
   Stat. 552, 553 [U. S. Comp. St. 1901, p. 3431].

2. SAME — DISTRICT COURT — JURISDICTION — CONTROVERSY OVER PROPERTY
SEIZED.

   The District Court has jurisdiction of such a controversy in a case in
   which it finds it absolutely necessary for the preservation of the estate
   to take the possession of the property from the adverse claimant by means
   of its receiver or the marshal, under clause 3 of section 2 (Act July 1,
   1898, c. 541, 30 Stat. 545, 546 [U. S. Comp. St. 1901, p. 3421]), and such
   a seizure and the determination of the issue thus raised between the
   trustee and the adverse claimant is a proceeding in bankruptcy as dis-
   tinguished from a controversy at law or in equity, within the true inter-
   pretation of section 23 of the act (30 Stat. 552, 553 [U. S. Comp. St. 1901,
   p. 3431]).

3. SAME—DISTRICT COURT—JURISDICTION—CONTROVERSIES AS TO PROPERTY IN
ITS CUSTODY.

   The District Court sitting in bankruptcy has jurisdiction to determine,
   after a reasonable notice to the claimants to present their claims to it,
   the claims of all parties to property and to the proceeds of property
   which its officers have lawfully reduced to their possession in the course
   of the administration of the estate of the bankrupt, and controversies
   between trustees in bankruptcy and adverse claimants to property which
   has in that way reached the custody of the District Court are not con-
   troversies at law or in equity, as distinguished from proceedings in bank-
   ruptcy, within the proper construction of section 23 of the bankrupt act
   of July 1, 1898, c. 541, 30 Stat. 552, 553 [U. S. Comp. St. 1901, p. 3431].

4. SAME—JURISDICTION OF REFEREE.

   A referee in bankruptcy has jurisdiction to draw to himself by sum-
   mary process or notice, and in the first instance to determine, the ques-
   tion of the validity of the claim of a third party to a lien upon, or an
   interest in, property or the proceeds of property lawfully in the custody
   of a trustee in bankruptcy.

5. BANKRUPTCY—EQUITY JURISPRUDENCE.

   The administration and distribution of the property of bankrupts is a
   proceeding in equity, and when authorized by act of Congress it becomes
   a branch of equity jurisprudence.

(Syllabus by the Court.)

Petition for Review of Decision of the District Court of the United
States for the District of South Dakota, in Bankruptcy.

Joe Kirby, for petitioners.
Park Davis, W. H. Lyon, J. H. Gates, and F. B. Dodge, for re-
spondents.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit
Judges.

SANBORN, Circuit Judge. This is a petition for a review of a decision of the District Court of South Dakota sitting in bankruptcy which confirmed the order of a referee that disallowed the claim of a mortgagee to a lien upon property in the custody of the trustee in bankruptcy. It presents this single question: Has a referee in bankruptcy jurisdiction to draw to himself by summary process or notice and to determine the question of the validity of the claim of a third party to a lien upon or an interest in property or the proceeds of property lawfully in the possession of the trustee in bankruptcy?

The property which is the subject of this controversy was a stock of goods situated in the state of South Dakota. The petitioner G. E. Rochford, a citizen of Iowa, had a chattel mortgage upon it made by the Redburn Grocery Company, a corporation, on August 5, 1902. The Redburn Grocery Company had obtained the property about July 16, 1902, from Walter B. Redburn and George W. Redburn, copartners as W. B. Redburn & Son, who were subsequently adjudged to be bankrupts. On August 16, 1902, a creditors' petition for an adjudication of the bankruptcy of the copartnership and its members was filed in the court below. This petition contained averments that the sale of the property from the partnership to the corporation was made with intent to defraud the creditors of W. B. Redburn & Son, and that it constituted an act of bankruptcy. On September 3, 1902, the partnership and its members were adjudged bankrupts on this petition. Meanwhile, and on August 18, 1902, the court appointed H. G. Smith receiver of the property of the bankrupts, and ordered him to take possession of the stock of goods covered by the chattel mortgage. He obeyed the order. Then the sheriff of the county in which the goods were situated by direction of the petitioner Joe Kirby, who was the attorney for the petitioner Rochford, seized the property under the chattel mortgage. The District Court then issued an order to the petitioner Kirby and to the sheriff to show cause why they should not be directed to surrender possession of the property to the receiver. Rochford and Kirby, without any objection to the jurisdiction of the court below, submitted to it the question of their right to the possession of the mortgaged property, and the court decided and ordered that the possession belonged and should be surrendered to the receiver. This order was obeyed, and thenceforth the receiver and his successor, the trustee, held the custody of the property and its proceeds. On November 24, 1902, after notice to the creditors and parties in interest and without challenge of the jurisdiction of the court by any one, an order was made that the trustee, who had succeeded the receiver, should sell the mortgaged property free of all liens and charges, and on November 29, 1902, the trustee made a sale of the property under this order. On November 28, 1902, the referee made an order that the petitioner Rochford should assert and propound to him any right, title, claim, or interest which he had in the mortgaged goods, and that he and his attorney, Kirby, were enjoined from threatening any intending purchaser of the property with their adverse claim to them. This order was served upon Rochford and Kirby, and it came on for a hearing on December 20, 1902. Kirby appeared generally for himself and specially for Rochford, on

whose behalf he objected to the jurisdiction of the court, and Rochford presented no claim to any right to, lien upon, or interest in the mortgaged property or its proceeds. The referee disregarded the objections to his jurisdiction, and adjudged that the chattel mortgage to Rochford was void as against the creditors of the bankrupts, and that neither he nor Kirby had any title or interest in, or lien upon, the stock of goods or its proceeds. This judgment was considered and sustained by the District Court on a petition for review, and it is now presented to this court for reconsideration.

It will be noticed from this brief statement of the facts which condition the question at issue (1) that the receiver and the trustee obtained possession of the mortgaged property under an order of the District Court which was the result of a hearing in which the question of the right of possession was submitted to it for decision by the mortgagee, Rochford, and by all the other parties in interest, without objection to its jurisdiction; and (2) that the trustee sold the property free from all liens and claims under an order issued, after notice to all parties in interest, under like circumstances.

The subsequent order of December 24, 1902, that the chattel mortgage is void in the face of creditors, was first made by the referee, but it was confirmed by the District Court, and it is assailed here, not upon the ground that the referee was without jurisdiction while the court had the requisite power, but upon the theory that the court had no authority to hear and adjudge the question determined by it in a summary way upon an order to show cause or a notice, and that the only method by which the mortgage could be avoided and the proceeds of the property relieved of the claim of the mortgagee was by a suit in equity in some court which could obtain jurisdiction of the parties by the service of a regular subpœna or summons. Moreover, if the District Court had jurisdiction to require the mortgagee, by a notice or an order to show cause, to present his claim before it, or to be barred of any lien upon, or right to share in, the proceeds of the property in its possession, the referee had like power in this particular instance; for neither the bankruptcy act nor the general orders in bankruptcy require such a proceeding to be had before the judge or the court. General Orders in Bankruptcy, xii, 1. 89 Fed. vii, 32 C. C. A. xvi. The real question, therefore, is whether or not the District Court sitting in bankruptcy had jurisdiction to determine in this summary way the claim of the mortgagee to the proceeds of the property in its custody. The bankruptcy act of 1898 provides that the District Courts shall have jurisdiction to "(3) appoint receivers or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts, after the filing of the petition and until it is dismissed or the trustee is qualified; * * * (6) bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy; (7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided. * * *" Act July 1, 1898, c. 541, § 2 (30 Stat. 545, 546; 3 U. S. Comp. St. 1901,

p. 3421). It also contains a provision that "(a) the United States Circuit Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants. (b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant." Section 23, 30 Stat. 552, 553 (3 U. S. Comp. St. 1901, p. 3431).

It will be seen that under subdivisions 6 and 7 of section 2 the court had plenary authority to bring in additional parties when necessary for the complete determination of a matter in controversy, to reduce the estates of bankrupts to money, to distribute this money and to determine controversies in relation thereto, "except as herein otherwise provided." This exception refers to section 23 of the act, which defines the jurisdiction of the courts of the United States and of the states. The most striking characteristic of section 23 is that it separates "controversies at law and in equity between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees" from "proceedings in bankruptcy." It provides that such controversies in law and in equity, as distinguished from proceedings in bankruptcy, shall fall within the jurisdiction of the Circuit Courts of the United States to the same extent as though bankruptcy proceedings had not been instituted. But it leaves controversies in "proceedings in bankruptcy" within the jurisdiction of the District Court which conducts those proceedings. Now, the petitioner Rochford is a citizen of the state of Iowa, and if the controversy between him and this trustee in bankruptcy is a "controversy at law or in equity as distinguished from proceedings in bankruptcy," under section 23, the concession must be made that the jurisdiction to determine it was not in the District Court of South Dakota, but in the United States Circuit Court for one of the districts of Iowa, or in some state court which could by service of summons obtain jurisdiction of the mortgagee, Rochford. Where, then, is the line of demarcation between "controversies at law and in equity" and "proceedings in bankruptcy," within the meaning of section 23? It is perhaps impossible to correctly draw this line in the absence of further adjudications, and it may be the part of wisdom to leave it to be marked by the decisions in actual cases as they shall arise. Fortunately there are already two decisions of the Supreme Court which sufficiently illustrate the distinction between the two classes of cases to enable us to readily place the controversy before us in the class in which it belongs.

In Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, that court held that a controversy between a trustee of a bankrupt estate and parties in possession of personal property under a conveyance by the bankrupt, which the trustee alleged to be fraudu-

lent as to creditors, was a controversy in law or in equity, under section 23, and that the District Court had no jurisdiction to hear or determine it on the theory that it was a proceeding in bankruptcy.

On the other hand, in Bryan v. Bernheimer, 181 U. S. 188, 197, 21 Sup. Ct. 557, 45 L. Ed. 814, the Supreme Court held that a controversy between an assignee under a state law of a party who was subsequently adjudged a bankrupt, a purchaser from such an assignee, and the United States marshal who had taken possession of the property from the purchaser, pursuant to an order issued under clause 3 of section 2 of the bankruptcy act, was a proceeding in bankruptcy, and that the District Court had jurisdiction (1) to order the marshal to take the goods from the possession of the purchaser, and (2) to adjudge the latter's claim to them upon a summary order to him to propound it to that court within 10 days or to be decreed to have no right or interest in the goods. It is true that in that case the purchaser appeared in the District Court and presented his claim to the property without protesting against its jurisdiction, but it is equally true and not less significant that the Supreme Court plainly declared that the District Court had the power under clause 6 of section 2 to bring in the assignee if necessary for the complete determination of the matter in controversy (page 198, 181 U. S., 21 Sup. Ct. 557, 45 L. Ed. 814), and that the District Court sitting in bankruptcy had plenary authority to summarily take property from the possession of adverse claimants by means of its receiver or the marshal, in case it found it absolutely necessary for the preservation of the estates under clause 3 of section 2. Pages 196, 197, 181 U. S., 21 Sup. Ct. 557, 45 L. Ed. 814. From these two decisions the following conclusions are fairly deducible:

(1) The District Court sitting in bankruptcy has no jurisdiction over a controversy between trustees in bankruptcy and an adverse claimant over the title or possession of property in the custody of the latter in the absence of his consent. But such an issue is a controversy at law or in equity, as distinguished from a proceeding in bankruptcy, within the meaning of section 23 of the bankrupt act of 1898.

(2) The District Court sitting in bankruptcy has jurisdiction of such a controversy in cases in which it finds it absolutely necessary for the preservation of the estate to take possession of the property from the adverse claimant by means of its receiver or the marshal under clause 3 of section 2, and such a seizure and the subsequent determination of the issue thus raised between the trustee and the adverse claimant is a proceeding in bankruptcy as distinguished from a controversy at law or in equity, within the true construction of section 23.

(3) The District Court sitting in bankruptcy has jurisdiction to determine, after reasonable notice to the claimants to present their claims to it, the claims of all parties to property and to the proceeds of property which its officers have lawfully reduced to their actual possession in the course of the administration of the estate of the bankrupt, and controversies between trustees in bankruptcy and adverse claimants to property which has in this way reached the cus-

tody of the District Court are not controversies at law or in equity, as distinguished from proceedings in bankruptcy, within the proper interpretation of section 23.

The administration and distribution of the property of bankrupts is a proceeding in equity, and when authorized by act of Congress it becomes a branch of equity jurisprudence. Bardes v. Hawarden Bank, 178 U. S. 524, 535, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Swarts v. Siegel, 54 C. C. A. 399, 402, 117 Fed. 13, 16. Property in the custody of a court of equity for administration is always held by it in trust for those to whom it rightfully belongs. The jurisdiction to inquire and determine who the lawful owners of it are, and to that end to call before it all claimants by a reasonable notice or order to present their claims to the court within a reasonable time, or to be barred of any right or interest in the property in its custody, or in its proceeds, is a power inherent in every court of equity, incidental and indispensable to the authority to administer the property in its possession and to distribute its proceeds. Chauncey v. Dyke Brothers, 119 Fed. 1, 3, 55 C. C. A. 579.

In the case in hand the court below lawfully acquired the possession of the mortgaged goods, and it lawfully converted them into money. The rightful custody of the property and its proceeds imposed upon that court the duty to distribute the latter to their true owners. This possession and this duty necessarily empowered it to call the petitioners by a notice or order to show cause to present their claims to the property or its proceeds to the court which held them within a reasonable time, or to be barred of any right to receive the property or the proceeds or any part of either. The order which was issued by the referee gave reasonable notice to this effect to the mortgagee and to his attorney. That portion of that order which enjoined the petitioners from threatening the purchasers at the sale with their adverse claims to the property may have overstepped and probably did pass beyond the limits of the authority of the referee. But that fact is immaterial now. The only question here presented is whether or not the referee and the court had jurisdiction to determine the validity of the claim of the mortgagee to the property or its proceeds. The sale was valid. The court lawfully acquired and rightfully held the custody of the property. The conversion of it into money by the sale was a rightful proceeding in bankruptcy. The issue of the notice to the mortgagee to present his claim to the court and the adjudication of it were far within the jurisdiction of the referee and of the court below, and the petition to review their action cannot be sustained. It is dismissed.