MOUND MINES CO. v. HAWTHORNE et al.

(Circuit Court of Appeals, Eighth Circuit. September Term, 1909.)

No. 3,084.

1. BANKRUPTCY (§ 116*) — JURISDICTION OF COURTS — SUMMARY PROCEEDINGS AGAINST ADVERSE CLAIMANTS.

Where a third party claims an interest in property which was in the possession of a bankrupt at the time of the bankruptcy and passed into that of his trustee, the referee may by a summary proceeding require such third party to appear in the bankruptcy court and present his claim, and may adjudicate the rights of the parties in respect thereof.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. BANKRUPTCY (§ 440*)—APPELLATE PROCEEDINGS—MATTERS REVIEWABLE BY APPEAL.

A decree of a District Court in bankruptcy, summarily adjudicating the right to property in the possession of a trustee as between him and an adverse claimant, is reviewable by appeal.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 440.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

3. VENDOR AND PURCHASER (§ 3*)—SPECIFIC PERFORMANCE (§ 99*)—CONTRACTS ENFORCEABLE—CONTRACTS FOR SALE OF REAL PROPERTY.

A contract by which one party agrees to sell and convey real estate on payment therefor at a stated time, and the other agrees to make such pay-

ment, although it also provides that if payment is not made at the time stipulated the purchaser shall forfeit all right and the seller be released from all obligation to convey, is not one giving an option, but one of bargain and sale: and where the purchaser has gone into possession and made valuable improvements on the property, a court of equity will decree a specific performance in his favor, notwithstanding his default in payment at the time promised, when there has been no change of circumstances or conditions to defeat his equity.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 3; Dec. Dig. § 3;* Specific Performance, Cent. Dig. § 301; Dec. Dig. § 99.*]

4. CONTRACTS (§ 211*)—EFFECT OF DEFAULT OF PLAINTIFF—WAIVER.

Although time is made an essential element of a contract by express stipulation, the party who is entitled to insist on a punctual performance by the other, or else that the agreement be ended, may waive his right and the benefit of any objection he might raise to a performance after the prescribed term, either expressly or by his conduct, and his conduct will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting after the other party's default.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 938-943; Dec. Dig. § 211.*]

Appeal from the District Court of the United States for the District of Colorado.

Proceeding by Silas T. Hawthorne, trustee in bankruptcy of the Griffith Mines Company, against the Mound Mines Company. From the decree, the Mound Mines Company appeals; one Robert W. Hanington intervening as appellee. Affirmed.

J. E. Robinson, for appellant.

Daniel B. Ellis (Henry T. Rogers, Lewis B. Johnson, Pierpont Fuller, and George A. H. Fraser, on the brief), for appellee Hawthorne.

Ernest Morris (William W. Grant, Jr., on the brief), for appellee Hanington.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. On August 11, 1906, Mary L. Fletcher, being the owner of the real estate in controversy in this action, on that day entered into an agreement in writing to sell to the Griffith Mines Company, a corporation organized under the laws of Colorado, the said real estate, which agreement contained, among other things, the following provisions:

"That the said party of the first part, for and in consideration of the covenants and agreements on the part of the said party of the second part hereinafter contained, and the payment to her by the said party of the second part of the sum of one dollar, the receipt of which is hereby acknowledged, agrees to sell and convey unto the said party of the second part, and said second party agrees to buy, all those certain lots and parcels of lands, * * * for the sum of five hundred ($500.00) dollars cash, and the said party of the second part, in consideration of the premises, agrees to pay said party of the first part the said sum of five hundred ($500.00) dollars in cash, for the above-described premises, six months from date hereof; the date of said payment being the 11th day of February, A. D. 1907. In the event of a failure to comply with the terms hereof by the said party of the second part, the said party

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the first part shall be released from all obligations in law or equity to convey said property, and the said party of the second part shall forfeit all right thereto. * * * It is understood and agreed by the parties hereto that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, and assigns of the party of the second part, and that the said party of the second part is to have immediate possession of the said premises."

Immediately after the execution and delivery of said agreement the said second party, the Griffith Mines Company, entered into possession of the real estate and constructed thereon valuable improvements, consisting of a concentrating mill, at a cost of approximately $15,000. The mill was not completed until about March 30, 1907. One W. D. Hoover was, at the time of the execution of the sale agreement aforesaid, president of the Griffith Mines Company, and continued as such up to the time of the instituting of this action. The Griffith Mines Company did not, on the 11th day of February, 1907, pay to Mrs. Fletcher the said $500, nor at any time since; nor did Mrs. Fletcher, in February, 1907, or at any time thereafter, make demand for the payment of said sum, or do any act indicating a forfeiture of the contract. On the other hand, her conduct and action thereafter, until in January, 1909, when she conveyed the premises by deed to appellant, indicated that she regarded said agreement of sale as still of binding force. In February, 1908, the Griffith Mines Company endeavored to negotiate a sale of the premises to the Mountain Mining Company, and for that purpose executed a conveyance to the Mountain Mining Company of the property in question and deposited such conveyance in escrow with the State Street Trust Company of Boston, Mass., to be delivered on or before April 1, 1908, upon the Mountain Mining Company performing certain conditions described in the escrow agreement. At the request of Mr. Hoover, president of the Griffith Mines Company, Mrs. Fletcher executed her deed to the premises in question to the Griffith Mines Company, which she forwarded to said State Street Trust Company, with a letter under date of February 21, 1908, in which she stated:

"Gentlemen: I herewith hand you, for the purpose of holding in escrow. under the terms of the escrow agreement between you and the Griffith Mines Company, my warranty deed to the Griffith Mines Company for the following described real estate: [Describing the same property mentioned in the sale agreement.] This deed to be delivered by you to William Tudor and Whitcomb, Reed & Co. for the Mountain Mining Company when the sum of $500 is received by you in payment therefor; and you are instructed to send to me the said $500 upon receipt thereof."

Upon the trial of this case Mrs. Fletcher was called as a witness, and among other things testified as follows:

"Q. You knew that a mill had been built upon the lots, did you? A. After it was built; yes. Q. Did you understand that that made you perfectly secure so far as your $500 was concerned? A. I hoped it did. Q. Mrs. Fletcher, is it or is it not a fact that you were ready and willing at all times to convey this property to the Griffith Mines Company upon payment to you of the $500? A. Well, it was insomuch as Mr. Hoover was concerned in it. I always regarded it as a personal matter with Mr. Hoover. Q. You would, at any time that he might have requested it, have conveyed the property to the Griffith Mines Company upon the payment to you of the $500, without regard to any limitations fixed in any option agreement or escrow agreement? A. Yes, sir."

The whole tenor of the testimony goes to show that, because of the personal friendship existing between Mrs. Fletcher and Mr. Hoover, she would make a conveyance at any time that he might request. On October 23, 1908, a petition in bankruptcy was filed against the Griffith Mines Company, and on November 18th it was adjudged a bankrupt. Appellee Hawthorne was appointed by the court receiver of the bankrupt estate and afterwards duly elected trustee, and in both capacities took and held possession of the premises in controversy. From the time of the execution and delivery of the agreement of sale up to the time that the receiver in bankruptcy took possession of the premises, the same were in the possession of the Griffith Mines Company, the bankrupt. After the proceedings in bankruptcy were instituted, the Mound Mines Company, appellant, was organized and incorporated under the laws of the state of Ohio. In the expectation that it would be a purchaser of the bankrupt's estate at a sale thereof, it obtained, in January, 1909, from Mrs. Fletcher, a deed to the premises in question, paying her therefor $500; she making the deed at the instance of Mr. Hoover, who was a creditor of the Griffith Mines Company and expected to receive his pay as such creditor through said Mound Mines Company.

Upon proper application by the trustee, he was authorized to sell the property of bankrupt, including the property in controversy; the portion in controversy in this action being purchased by Robert W. Hanington, who has been permitted to intervene as appellee. After the sale to Mr. Hanington, he objected to the confirmation, for the reason that the conveyance by Mrs. Fletcher to the Mound Mines Company constituted at least a cloud upon the title. Thereupon the trustee filed his petition before the referee, setting forth the essential facts, and asking that the Mound Mines Company be required to convey said property to petitioner, upon payment of the sum of $500. An order to show cause was duly issued and served upon the Mound Mines Company, which appeared at the time stated before the referee and interposed objections on the ground that the court had no jurisdiction to determine the rights of the parties in a summary proceeding, and that the rights of the parties could only be determined by a plenary action for that purpose. The case proceeded to hearing, the objection of appellant to the jurisdiction was overruled, and an order made by the referee that said Mound Mines Company convey said premises to the trustee upon payment to it of the sum of $500, to which order of the referee appellant filed its petition for review by the District Court, and upon a hearing the finding and order of the referee was affirmed. From the decree of the District Court appellant has prosecuted its appeal to this court. Appellant here insists that the referee had no jurisdiction by summary proceeding to determine the matter in controversy.

The law is now settled that the interest of a third party in property claimed to belong to the bankrupt estate, which, at the time of the institution of the proceedings in bankruptcy, is in the possession of such third person, claiming an interest therein, can only be determined by an original suit brought for that purpose. Where, however, property

which is in the possession of a bankrupt at the time of the bankrupt proceedings, and passes as part of his estate into the possession of the trustee in bankruptcy, and a third party claims an interest therein, the referee may, by a summary proceeding, require such third party to appear in the bankrupt court, present his claim, and the referee adjudicate the rights of the parties in respect thereof. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; In re Rochford et al., 124 Fed. 182, 59 C. C. A. 388; In re Schermerhorn, 145 Fed. 341, 76 C. C. A. 215; In re Eppstein, 156 Fed. 42, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465; In re Kellogg, 121 Fed. 333, 57 C. C. A. 547; In re Noel (D. C.) 137 Fed. 694; Plaut v. Graham Mfg. Co. (D. C.) 159 Fed. 754. The referee, therefore, had jurisdiction.

Appellee Hanington now urges that this court is without jurisdiction to review the decree of the District Court in a proceeding by appeal. That appeal is the proper proceeding in such a case was held by the Supreme Court in Hewitt v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, by this court in Dodge v. Norlin, 133 Fed. 363, 66 C. C. A. 425, and John Deere Plow Co. v. McDavid, 137 Fed. 802–810, 70 C. C. A. 422, and was also held in Franklin v. Stoughton Wagon Co., 168 Fed. 857, 94 C. C. A. 269.

Proceeding, then, to the merits of the case, it is urged, on the part of appellant, that the contract of sale in question cannot now be enforced, as the provision therein, providing "that in the event of a failure to comply with the terms thereof by the said party of the second part the said party of the first part shall be released from all obligations in law or equity to convey said property, and the said party of the second part shall forfeit all right thereto," operated to divest the Griffith Mines Company of all title or interest in and to the property, upon its failure to make the payment February 11, 1907, as provided in the agreement. The question has been discussed by counsel upon the theory that the agreement was an optional contract only. We regard the contract, not as an optional one, but a contract of bargain and sale. By its terms Mrs. Fletcher agreed to sell and convey, and the Griffith Mines Company agreed to pay to Mrs. Fletcher the sum of $500 in cash for, the premises on the date named. This was a binding agreement upon both parties. Not only was the Griffith Mines Company entitled to enforce its performance upon tender of the sum named at the time named, but Mrs. Fletcher could, upon failure of the company to make the payment at the time named, have maintained an action for the purchase price.

While it is competent and legal for parties to a contract to stipulate that time shall be of the essence of the contract, and provide for forfeiture in case the terms of the contract are not complied with, yet a court of equity will determine and decree the rights of the parties in accordance as equity and justice may require. In Pomeroy's Equity Jurisprudence, vol. 6, § 816, it is said:

"Contracts often contain a clause that, if payment is not made at the day, the defaulting vendee shall forfeit all payments previously made and lose his right to the land. The courts of equity in England and most American jurisdictions deal with such a forfeiture clause on the principle that equity abhors a forfeiture, and will relieve from it. It will, if possible, consider the clause

as a stipulation for security of performance, and not as intending a great loss to one party by a slight failure to perform, and will decree a performance against the vendor, with compensation for delay by payment of interest on the purchase money, thus relieving against the forfeiture."

In Cheney v. Libby, 134 U. S. 68, 78, 10 Sup. Ct. 498, 502, 33 L. Ed. 818, it is said:

"Even where time is made material, by express stipulation, the failure of one of the parties to perform a condition within the particular time limited will not in every case defeat his right to specific performance, if the condition be subsequently performed without unreasonable delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief. The discretion which a court of equity has to grant or refuse specific performance, and which is always exercised with reference to the circumstances of the particular case before it (Hennessey v. Woolworth, 128 U. S. 438, 442, 9 Sup. Ct. 109, 32 L. Ed. 500), may, and of necessity must, often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions."

While courts of equity are loth to and will not ordinarily aid a party who is guilty of laches in performing, yet where a party has gone into possession of real estate, made valuable and lasting improvements thereon, and his only breach of the covenant is that of time of payment, and the grantor has only sustained the loss resulting from being kept out of his money, which loss can be compensated by interest, equity under such circumstances usually grants relief to complainant, notwithstanding he is himself in default.

There is, however, another ground which is decisive of appellant's contention; that is, that Mrs. Fletcher, by her acts and conduct, waived the forfeiture and acted upon the theory that the contract was still a subsisting one. Though, by agreement, parties to a contract may make time the essence thereof, and provide that the party in default shall forfeit all rights thereunder, yet it is well established that the party in whose favor the quality exists may either expressly or by conduct waive such provision. In Pomeroy on Contracts (2d Ed.) § 394, it is said:

"Wherever time is made essential, either by the nature of the subject-matter and object of the agreement, or by express stipulation, or by a subsequent notice given by one of the parties to the other, the party in whose favor this quality exists—that is, the party who is entitled to insist upon a punctual performance by the other, or else that the agreement be ended—may waive his right and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly or by his conduct, and his conduct will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting and not ended by the other party's default."

The same rule is announced in Jones on Real Property, vol. 1, § 699; Raymond v. San Gabriel Valley Land & Water Co., 53 Fed. 883, 4 C. C. A. 89 (8th Circuit); Thayer v. Star Mining Co., 105 Ill. 540; Phillips v. Carver, 99 Wis. 561, 75 N. W. 432; Robinson v. Trufant, 97 Mich. 410, 56 N. W. 769; Blair v. Blair et al., 48 Iowa, 393.

It being clear from the evidence that Mrs. Fletcher waived her right of forfeiture, the bankrupt having expended a large amount of money in permanent improvements thereon, which would be lost to the bank-

rupt estate if the relief asked was not granted, and it being apparent that appellant, who has acquired the interest of Mrs. Fletcher, can be fully compensated for all loss by the payment of interest, the decree of the court below was in substantial harmony with the equitable rights of the parties. As the decree, however, did not provide for the payment of interest upon the $500, it will be modified, so as to require the trustee to pay the sum of $500, with legal interest thereon from the 11th day of February, 1907.

In all other respects the decree is affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.