### In re SEGER BROS. CO.

(District Court, E. D. Michigan, S. D. June 13, 1917.)

No. 3558.

1. COURTS ⊕39—AUTHORITY—JURISDICTION.

A court has authority to determine whether it has jurisdiction to dispose of a particular case.

2. BANKRUPTCY ⊕302(4)—COURTS—JURISDICTION—PETITION.

In determining whether it has jurisdiction to entertain a petition by a trustee in bankruptcy to have decided conflicting claims to the ownership of a lease formerly held by the bankrupt as a tenant, the court of bankruptcy must accept the allegations of the petition as true in so far as not controverted by the other claimants, and may on controverted issues hear evidence.

3. BANKRUPTCY ⊕287(1)—COURTS—JURISDICTION—PROCEEDING IN BANKRUPTCY.

Bankr. Act July 1, 1898, c. 541, § 2, subds. 6 and 7, 30 Stat. 545 (Comp. St. 1916, § 9586), authorize the bankruptcy court to bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy, and to cause the estates of bankrupts to be collected, reduced to money, and distributed, and to determine controversies in relation thereto. Section 23a (Comp. St. 1916, § 9607) declares that a Circuit Court shall have jurisdiction of all controversies, at law and in equity, as distinguished from proceedings in bankruptcy between trustees as such and adverse claimants, concerning the property acquired or claimed by the trustees, in the same manner and to the same extent as though the bankruptcy proceedings had not been instituted. A trustee, who asserted that a lease be-

longed to the bankrupt, obtained peaceful possession of the leasehold of which the bankrupt had had possession until the time of the filing of the petition. *Held*, that, in such case, the adverse claim of the lessor should be determined by a proceeding in bankruptcy instead of by a plenary suit.

In Bankruptcy. In the matter of the bankruptcy of the Seger Bros. Company, a corporation. Petition by the trustee for determination of conflicting claims to the ownership of a lease formerly held by the bankrupt as a tenant. Hearing directed.

Selling & Brand, of Detroit, Mich., for trustee.

Welsh, De Foe & Kahn, of Detroit, Mich., and Frank A. Stivers, of Ann Arbor, Mich., for respondent.

TUTTLE, District Judge. This is a petition by the trustee of said bankrupt seeking to have determined by this court certain conflicting claims to the ownership of a lease formerly held by said bankrupt as tenant. The sole question presented is whether this court has jurisdiction to determine herein the rights of the trustee and of the adverse claimant to such lease.

The petition of the trustee alleges that the bankrupt was, at the time of the filing of the petition in bankruptcy, the owner of the lease mentioned, covering a certain store occupied by the bankrupt in the city of Monroe, Mich.; that said bankrupt was in possession thereof until on or about February 23, 1917, when one of the creditors of the bankrupt caused an execution to be levied upon certain of its property located in said store, and the sheriff of the county, in making the levy, closed said store, whereupon the bankrupt surrendered to said sheriff the keys thereof, so that said property could remain in said store undisturbed until the execution sale; that, immediately upon the making of said levy, the involuntary petition was filed herein, and a receiver appointed, who forthwith took possession of said store, demanding and receiving from said sheriff the keys thereof, and thereafter remaining in open and sole possession thereof until the appointment of said trustee, to whom he then surrendered possession of such store; that neither the receiver, the trustee, nor any one else having authority so to do, has ever surrendered possession of said premises or canceled said lease, or surrendered the right of said bankrupt, receiver, or trustee therein, but that said bankrupt, receiver, and trustee have asserted ownership thereof as an asset belonging to the bankrupt estate; that, pursuant to the bankruptcy law, the sale of all the assets of said bankrupt, including said lease, was advertised to be held at said store on May 4, 1917; that on May 2, 1917, the Monroe Building Company, the lessor of said lease, delivered to said receiver a notice, copy of which was attached to the petition, whereby said lessor claimed to be in possession of said store, and claimed that all rights of said bankrupt and its estate therein had ceased under said lease; that at said sale one Harold Hutchins, agent of Hutchins & Co., a corporation, announced that he held a lease from the said lessor of said store, executed after the filing of the petition in bankruptcy, and objected to the sale of said lease, expressly stating that he would resist any attempt on the part of the purchaser of the rights under said lease to remain in possession of

said store, and that any person buying said lease was buying a lawsuit: that upon the election of said trustee, and prior to the sale of said property, certain witnesses were sworn by the referee in bankruptcy, and testified concerning the conflicting claims to said lease; that the secretary and treasurer of said Monroe Building Company testified that he claimed that all rights of the bankrupt and its estate under said lease had terminated by reason of a default in rent on February 20, 1917, at which time said store had been closed by a creditor of the bankrupt, and thereupon summary proceedings were commenced to recover possession thereof, which proceedings were afterwards abandoned; that said lessor attempted to charge said sheriff a larger rental than specified in said lease, which said sheriff refused to pay; that on March 1, 1917, after the filing of the petition in bankruptcy, the said lessor rendered said sheriff a bill for the amount of rental so demanded by it; that said lessor had not obtained the keys or possession of said premises; that no writing was executed by said bankrupt assigning, releasing, or canceling any rights in said lease; and that, as said lease contained a clause against assigning or subletting, said lessor claimed that all rights of said bankrupt in said lease had ceased, and that said lessor would commence ejectment proceedings against any purchaser thereof; that said sheriff, said receiver, and the president of the bankrupt testified that no surrender had been made by them, respectively, of possession of said premises to the lessor; that thereupon said lease was sold, together with the other assets of said bankrupt, on the condition that the trustee would at the expense of the estate defend the possession of the purchaser against the claims of said lessor and said Hutchins, and, if the trustee were unsuccessful therein, a refund would be made to the purchaser; that the trustee has been informed by said lessor and said Hutchins "that, as soon as the purchaser takes possession of said store, ejectment or other proceedings will be commenced to oust him, thereby interfering with the proper administration of said estate, and jeopardizing the interests of the persons interested therein and of your petitioner as trustee, and constituting a cloud upon the title of your petitioner under said lease, and of your petitioner's said purchaser at said sale, and constituting an interference with the duties of your petitioner to reduce the assets to money for the benefit of the persons interested in said estate."

The petition prayed that a hearing thereon be granted for the purpose of bringing in the persons claiming rights in said lease and determining in this cause their respective rights; that all claims that said lease had been canceled or surrendered be quieted by proper order of this court; and that the trustee and his purchaser be decreed to have a valid title thereto as against said lessor and those claiming under it; and that the latter be restrained from interfering with the possession of said premises to be given to said purchaser, and from taking any proceedings to regain possession thereof or to oust the trustee or his purchaser therefrom.

In the showing of respondents appearing specially in response to the order to show cause, respondents deny the jurisdiction of this court to determine in this cause and on this petition the conflicting rights to this lease, claiming that they are adverse claimants within the meaning of

the Bankruptcy Act, and that this court is without jurisdiction to determine the issues raised by such petition, except in a plenary action, and even in such action not without consent of respondents. Respondents allege that in a proper suit they will introduce testimony tending to prove the facts set forth in the notice delivered by the said lessor to the said receiver hereinbefore referred to. Said notice alleged that said lessor claimed the right to possession of the said premises; that said lessor, prior to the filing of said petition in bankruptcy, commenced legal proceedings to recover possession of said premises, which proceedings resulted in a voluntary surrender of said premises to the said lessor by the said bankrupt, and prior to the filing of the said petition in bankruptcy, in consequence of which surrender said proceedings were discontinued, and the lessor entered into actual possession of the property; that after obtaining actual possession of said premises the rights of said lessor therein were exercised by it through the aforesaid sheriff, to whom said lessor rented the same for the purpose of storing goods seized by him on a writ of execution; that the actual possession of the said premises by said sheriff as tenant of said lessor continued until after the adjudication in bankruptcy, whereupon the aforesaid trustee, without the knowledge or consent of said lessor, took possession of the said premises from the said sheriff, and has continued in the possession of the same by virtue of the permission of the said lessor, such lessor having all the time since the adjudication asserted rights of possession in said premises, and having permitted the use of the same only on the understanding that the said trustee should pay therefor a reasonable rental for the use thereof; that since the date of abandonment of the aforesaid legal proceedings the said lessor had been at all times in actual and legal possession of the said premises.

In their brief, respondents refer to a judgment recovered by the said Monroe Building Company as of March 12, 1917, in an action for possession instituted by it against said bankrupt before the circuit court commissioner for said Monroe county, based on the ground that said bankrupt had violated a covenant in said lease against assignment without the lessor's consent by making an assignment for the benefit of creditors.

The jurisdiction of this court to grant the relief prayed in this proceeding is disputed, and it therefore becomes necessary to determine this question of jurisdiction before proceeding to a consideration of the merits of the case.

[1] That the court may determine whether it possesses this jurisdiction is clear. Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413; First National Bank of Chicago v. Chicago Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051; In re Rathman, 183 Fed. 913, 106 C. C. A. 253 (C. C. A. 8.).

[2] As was said in the case first cited:

"In many cases jurisdiction may depend on the ascertainment of facts involving the merits, and in that sense the court exercises jurisdiction in disposing of the preliminary inquiries, although the result may be that it finds that it cannot go further."

In considering the question whether the court may entertain this petition, the allegations of such petition must be accepted as true for the

purpose of the present argument, although the correct determination of this preliminary inquiry may require that such of these allegations of fact as are disputed should be established by evidence.

[3] After giving the matter careful thought, I have no doubt that the court has jurisdiction to consider and dispose of this petition and to grant such relief thereon as the evidence may warrant. Murphy v. John Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327; Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; In re Kleinhans (D. C.) 113 Fed. 107; In re Jersey Island Packing Co., 138 Fed. 625, 71 C. C. A. 75, 2 L. R. A. (N. S.) 560; Gazley v. Williams, 147 Fed. 678, 77 C. C. A. 662, 14 L. R. A. (N. S.) 1199; Mound Mines Co. v. Hawthorne, 173 Fed. 882, 97 C. C. A. 394.

Section 2, subds. 6 and 7 of the Bankruptcy Act, authorizes the bankruptcy court to "bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy," and to "cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided." Section 23a is as follows:

"The United States Circuit Court shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants."

The question, therefore, involved here is whether this proceeding is a controversy in equity between the trustee and an adverse claimant or is a proceeding in bankruptcy within the meaning of the Bankruptcy Act.

The principles applicable have been so clearly stated in an opinion of the Circuit Court of Appeals for the Eighth Circuit in the case of Re Rochford, 124 Fed. 182, 59 C. C. A. 388, that I quote at length from such opinion, as follows:

"Where, then, is the line of demarcation between 'controversies at law and in equity' and 'proceedings in bankruptcy,' within the meaning of section 23? It is perhaps impossible to correctly draw this line in the absence of further adjudications, and it may be the part of wisdom to leave it to be marked by the decisions in actual cases as they shall arise. Fortunately there are already two decisions of the Supreme Court which sufficiently illustrate the distinction between the two classes of cases to enable us to readily place the controversy before us in the class in which it belongs.

"In Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, that court held that a controversy between a trustee of a bankrupt estate and parties in possession of personal property under a conveyance by the bankrupt, which the trustee alleged to be fraudulent as to creditors, was a controversy in law or in equity, under section 23, and that the District Court had no jurisdiction to hear or determine it on the theory that it was a proceeding in bankruptcy.

"On the other hand, in Bryan v. Bernheimer, 181 U. S. 188, 197, 21 Sup. Ct. 557, 45 L. Ed. 814, the Supreme Court held that a controversy between an assignee under a state law of a party who was subsequently adjudged a bankrupt, a purchaser from such an assignee, and the United States marshal, who had taken possession of the property from the purchaser, pursuant to an order issued under clause 3 of section 2 of the Bankruptcy Act, was a pro-

ceeding in bankruptcy, and that the District Court had jurisdiction (1) to order the marshal to take the goods from the possession of the purchaser, and (2) to adjudge the latter's claim to them upon a summary order to him to propound it to that court within 10 days or to be decreed to have no right or interest in the goods. It is true that in that case the purchaser appeared in the District Court, and presented his claim to the property without protesting against its jurisdiction, but it is equally true and not less significant that the Supreme Court plainly declared that the District Court had the power under clause 6 of section 2 to bring in the assignee if necessary for the complete determination of the matter in controversy (page 198, 181 U. S., 21 Sup. Ct. 557, 45 L. Ed. 814), and that the District Court sitting in bankruptcy had plenary authority to summarily take property from the possession of adverse claimants by means of its receiver or the marshal, in case it found it absolutely necessary for the preservation of the estates under clause 3 of section 2. Pages 196, 197, 181 U. S., 21 Sup. Ct. 557, 45 L. Ed. 814. From these two decisions the following conclusions are fairly deducible:

"(1) The District Court sitting in bankruptcy has no jurisdiction over a controversy between trustees in bankruptcy and an adverse claimant over the title or possession of property in the custody of the latter in the absence of his consent. But such an issue is a controversy at law or in equity, as distinguished from a proceeding in bankruptcy within the meaning of section 23 of the Bankrupt Act of 1898.

"(2) The District Court sitting in bankruptcy has jurisdiction of such a controversy in cases in which it finds it absolutely necessary for the preservation of the estate to take possession of the property from the adverse claimant by means of its receiver or the marshal under clause 3 of section 2, and such a seizure and the subsequent determination of the issue thus raised between the trustee and the adverse claimant is a proceeding in bankruptcy as distinguished from a controversy at law or in equity, within the true construction of section 23.

"(3) The District Court sitting in bankruptcy has jurisdiction to determine, after reasonable notice to the claimants to present their claims to it, the claims of all parties to property and to the proceeds of property which its officers have lawfully reduced to their actual possession in the course of the administration of the estate of the bankrupt, and controversies between trustees in bankruptcy and adverse claimants to property which has in this way reached the custody of the District Court are not controversies at law or in equity, as distinguished from proceedings in bankruptcy, within the proper interpretation of section 23.

"The administration and distribution of the property of bankrupts is a proceeding in equity, and when authorized by act of Congress it becomes a branch of equity jurisprudence. Bardes v. Hawarden Bank, 178 U. S. 524, 535, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Swarts v. Siegel, 54 C. C. A. 399, 402, 117 Fed. 13, 16. Property in the custody of a court of equity for administration is always held by it in trust for those to whom it rightfully belongs. The jurisdiction to inquire and determine who the lawful owners of it are, and to that end to call before it all claimants by a reasonable notice or order to present their claims to the court within a reasonable time, or to be barred of any right or interest in the property in its custody, or in its proceeds, is a power inherent in every court of equity, incidental, and indispensable to the authority to administer the property in its possession and to distribute the proceeds. Chauncey v. Dyke Brothers, 119 Fed. 1, 3, 55 C. C. A. 579."

It is now well established that when the trustee in bankruptcy has acquired peaceable possession of property claimed by him to belong to the bankrupt and to be a part of the assets of its estate, proceedings instituted by such trustee in a United States Court having custody, through such trustee, of such property, to determine the validity of adverse claims to such property, are "proceedings in bankruptcy," within the meaning of section 23a, already quoted, and that the proper bankruptcy court has jurisdiction, either by summary proceedings or

by a plenary suit, to bring in all persons claiming rights in such property and to determine the existence and extent of such rights.

"When the court of bankruptcy, through the act of its officers, such as referees, receivers, or trustees, has taken possession of a res, as the property of a bankrupt, it has ancillary jurisdiction to hear and determine the adverse claims of strangers to it." Murphy v. John Hofman Co., supra.

"Upon the filing of a petition in bankruptcy, followed by an adjudication, all property in the possession of the bankrupt of which he claims the ownership passes at once into the custody of the court of bankruptcy, and becomes subject to its jurisdiction to determine, by plenary action or summary proceeding, as the nature of the case demands, all adverse or conflicting claims thereto, whether of title or of liens; and that court may, by the process of injunction, protect its jurisdiction against interferences. It may draw to itself the determination of all controversies over the property in its possession, and, when it once lawfully attaches, its jurisdiction cannot be destroyed or impaired by the unauthorized surrender of possession of the property by the officers of the court, or through a seizure thereof by an adverse claimant. Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; Chauncey v. Dyke Bros., 55 C. C. A. 579, 119 Fed. 1; In re Corbett (D. C.) 104 Fed. 872. See, also, In re Rochford, 59 C. C. A. 388, 124 Fed. 182." In re Schermerhorn, 145 Fed. 341, 76 C. C. A. 215.

"If the District Court, having possession of the res, did not have jurisdiction to hear and determine claims to or against the res, unless the claimant should consent, what court did? Could the petitioner go into the state court, and there assert his lien, and then obtain a decree for its enforcement, and thus deprive the court of primary jurisdiction of the control and custody of the controverted property? The possession of the res draws to the court jurisdiction of all questions in respect to title or liens, irrespective of citizenship." In re McMahon, 147 Fed. 684, 77 C. C. A. 668 (C. C. A. 6).

"The question of jurisdiction is not free from doubt, but we are of opinion that the result of the cases is that a court of bankruptcy may by summary process require those who assert title to, or an interest in, property which has rightfully come into its possession and control as part of the bankrupt's estate, to present their claims to that court, and, the notice being reasonable, may proceed to adjudicate the merits of such claims. In re Kellogg, 121 Fed. 333, 57 C. C. A. 547; In re Rochford, 124 Fed. 182, 59 C. C. A. 388." In re Eppstein, 156 Fed. 42, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465.

"A proceeding in bankruptcy is a proceeding in equity, and, for the purposes of enforcing and protecting its jurisdiction, a court of bankruptcy has all the inherent powers of a court of equity. This being the case, it may be appealed to by supplemental and ancillary bill to enforce its orders, sustain its jurisdiction, and protect parties before it in the enjoyment of rights secured through and under it." In re Swofford Bros. Dry Goods Co. (D. C.) 180 Fed. 519.

If the allegations of this petition relating to the possession of the property here involved be established by competent evidence showing that, at the time of the filing of the petition in bankruptcy, the bankrupt had possession of such property, and that such possession was afterwards acquired, and is now held, by the trustee as alleged in its petition, it is clear from the authorities cited that this court will have jurisdiction to determine in this proceeding the rights of the conflicting claimants to this property and to bring in such claimants as parties for that purpose. In view, however, of the allegations of the showing in the nature of an answer by the respondents, it will be necessary to determine this question of jurisdiction before proceeding to a disposition

243 F.—30

of the merits of the case. On the hearing, therefore, the court will first consider the evidence offered on the question of the jurisdiction, and if such evidence establishes such jurisdiction, the court will, at the same hearing, next consider the evidence offered on the question of title and determine the rights of the parties claiming such title. If, however, the evidence on the preliminary inquiry does not establish such jurisdiction, under the rule herein followed such petition will be dismissed.