## In re PLYMOUTH ELEVATOR CO.

(District Court, D. South Dakota, S. D. October 20, 1911.)

No. 587.

1. BANKRUPTCY (§ 288*) — JURISDICTION OF BANKRUPTCY COURT — ADVERSE CLAIMS TO PROPERTY.

Where a chattel mortgagee who had taken possession of the mortgaged property for the purpose of foreclosure prior to the filing of a petition in bankruptcy against the mortgagor was notified of an application by the bankrupt's trustee for an order authorizing him to sell the property free of incumbrance, and to hold the proceeds as a special fund subject to the mortgagee's claim, in case it should be established, permitted such an order to be made without objection and acquiesced therein by surrendering the property to the trustee for sale, pursuant to such order, the proceeds of the sale came rightfully into possession of the bankruptcy court which had jurisdiction to distribute the same and to summarily determine the mortgagee's rights therein.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 288.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. CORPORATIONS (§ 415*)—AUTHORITY OF PRESIDENT—EXECUTION OF MORTGAGE.

Under Civ. Code, S. D. §§ 434, 435, providing that the powers of a corporation shall be exercised and its business conducted and controlled by its board of directors, and that the officers shall perform the duties enjoined on them by law and the by-laws, a chattel mortgage executed to secure an antecedent debt by the president of a corporation without authority under the by-laws, and which was not authorized nor ratified by the directors, who had no knowledge of it until the bankruptcy of the corporation, was invalid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1664–1669; Dec. Dig. § 415.*]

In the matter of the Plymouth Elevator Company, bankrupt. On review of decision and order of referee holding invalid a chattel mortgage in favor of T. E. Wells & Co. Affirmed.

E. R. Winans (Sonnenschein, Berkson & Fishell, of counsel), for petitioner for review.

Boyce & Warren, for respondent.

---

ELLIOTT, District Judge. This is a petition for a review of a decision and order of Henry A. Muller, referee in bankruptcy, in the above-entitled matter, dated September 27, A. D. 1910.

The record brought here for review discloses that the following proceedings have been had:

On the 7th day of September, 1909, the Plymouth Elevator Company, a corporation, was, upon petition of creditors, adjudicated bankrupt, and one W. Z. Sharp appointed its trustee in bankruptcy. Prior thereto, and after the filing of the said petition, on, to wit, the 7th day of August, 1909, an order was entered by Hon. John E. Carland, then United States District Judge for the District of South Dakota, restraining T. E. Wells & Co. from proceeding further with the foreclosure of a certain chattel mortgage upon two certain elevators hereinafter referred to. Later, on or about the 13th day of September, 1909, the trustee in bankruptcy of the Plymouth Elevator Company filed a petition with the referee in bankruptcy, alleging and setting forth that the said elevators were chiefly valuable for the purpose of receiving, storing, and shipping grain, and that the bulk of that business was transacted between September and January of each year, and that unless the said elevators could be sold within a short time after the 1st of September, 1909, the said elevators could probably not be sold at all until the next year and petitioned, for that reason, for a sale of the said elevators, free of the lien of the said chattel mortgage to said T. E. Wells & Co. Thereupon the referee issued an order to show cause why the prayer of the petitioners should not be granted, which was duly personally served upon the said mortgagee, and upon the return day named therein, to wit, September 25, A. D. 1909, no one appearing in opposition thereto, and without objection, an order was duly entered by the said referee by which the said elevators covered by the said chattel mortgage were ordered to be sold to one Sam Walter, who had made an offer of $5,500 therefor, which order contained the following provision:

"That said sale be free and clear of incumbrance, and title thereof transferred absolutely to the said Sam Walter (the purchaser) and the lien of said T. E. Wells & Co., such as it may be or hereafter determined to be transferred to the proceeds of sale of said property, subject to all the rights which the said T. E. Wells & Co. now has by virtue of its possession of the property herein described, and its rights obtained under and by virtue of its mortgage and the orders of this court hereinbefore entered in this matter. * * * That the trustee shall retain in his possession as a separate fund, not to be disbursed until the further order of this court made herein, all of the proceeds derived from the sale of said elevators."

And on the same date, and as a part of the proceedings in said case, upon said hearing, the referee entered an order that T. E. Wells & Co. deliver possession of the said elevator properties to W. Z. Sharp, trustee of the Plymouth Elevator Company, which order is in substance as follows:

"It is ordered and adjudged that T. E. Wells & Co. forthwith, and upon presentation of this order, deliver the possession of the elevator situated at Doon, Iowa, known as the 'north elevator,' and the elevator situated at Doon, Iowa, known as the 'south elevator,' situated alongside of the right of way of the Chicago, St. Paul, Minneapolis & Omaha Railway, which was formerly

the property of the Plymouth Elevator Company, with each and every part and parcel thereof and all of the appurtenances thereunto belonging, and all other property used in connection therewith and found upon said premises when taken possession of by said T. E. Wells & Co., to W. Z. Sharp, trustee of the Plymouth Elevator Company.

"And it is further ordered that when said premises shall have been turned over to W. Z. Sharp, trustee, and he shall have received the same, he shall in like manner deliver said premises and the whole thereof, together with all the appurtenances thereunto belonging, to Sam Walter (the purchaser thereof), and take his receipt therefor."

That, pursuant to said order of September 25, 1909, the said mortgagee, T. E. Wells & Co., at once turned the elevator properties over to the said trustee in bankruptcy, and he thereupon delivered the same to the purchaser, and received the proceeds thereof, amounting to $5,500.

That more than six months later, on, to wit, April 20, A. D. 1910, there was filed in the office of the referee a petition of the trustee for an order to show cause why the pretended lien claimed by the mortgagee upon the proceeds of the sale of said elevator properties should not be adjudged void and of no effect, and why such proceeds should not be placed with the other cash assets in the hands of the trustee and made available for distribution among the general creditors, which said petition alleged in substance: That petitioner was the duly appointed, qualified, and acting trustee of said bankrupt. That among the assets which came into his hands as such trustee were the following: The grain elevator at Doon, Lyon county, Iowa, known as the "north elevator," and the elevator at Doon, Lyon county, Iowa, known as the "south elevator," both situated upon the right of way of the Chicago, St. Paul, Minneapolis & Omaha Railway.

The petition further alleged, in substance, that there was at the time of the appointment of the petitioner of record in the office of the register of deeds of Lyon county, Iowa, a pretended mortgage, giving its date, place of record, the description of the notes it secured, and the description of the property, substantially as above stated. It was further alleged that on or about the 23d of July, 1909, the said mortgagee, T. E. Wells & Co., commenced the foreclosure of said chattel mortgage, and advertised said property to be sold at public auction on the 9th day of August, 1909, at 2 o'clock p. m. It was further alleged that on the 7th day of August, 1909, an order was duly made in the above-entitled matter, restraining the foreclosure of this chattel mortgage until further order of the court. It was further alleged that the bankrupt was a corporation organized and doing business under the laws of the state of South Dakota, having its principal place of business at Sioux Falls in said state, and had a board of four directors.

It was further alleged: That said mortgage to the said T. E. Wells & Co. was signed by J. G. Walter, the president of the Plymouth Elevator Company, and by him delivered to the agent of the said T. E. Wells & Co. That no meeting of the board of directors of said Plymouth Elevator Company was ever held at which the giving of said mortgage was authorized or considered, and no member of the board

of directors, except the said J. G. Walter, ever assented to or authorized the giving of said mortgage, or had any knowledge that any such mortgage was given or contemplated until long after the said pretended mortgage had been signed and delivered as aforesaid, and the said mortgage was made without the knowledge or consent of the secretary of said corporation and was not countersigned by him. That a code of by-laws was duly adopted by said corporation on the 4th day of May, 1905, and was still in force at all times subsequent thereto. That article 7 of said by-laws provided:

"It shall be the duty of the secretary to keep a minute account of all meetings of said corporation, retain in his custody all the books, records, vouchers, and documents belonging thereto, and to safely and properly keep the same; countersign all certificates of stock, deeds, notes, and mortgages, etc. And to keep a proper record of all transfers thereof, and generally to do and perform all acts usually performed by such officer. * * *"

It was further alleged that at the time the said pretended mortgage was given to said T. E. Wells & Co. the said Plymouth Elevator Company was insolvent, and the said Plymouth Elevator Company by giving said mortgage intended to prefer the said T. E. Wells & Co. over its other creditors, and the said T. E. Wells & Co. at the time it received the said pretended mortgage had reasons to believe that the said Plymouth Elevator Company intended thereby to give preference to the said T. E. Wells & Co. over its other creditors.

It was further therein alleged: That on the 20th day of September, 1909, upon notice and order to show cause, duly served upon the mortgagee, and without objection, an order was made and entered by this court authorizing the petitioner to sell the property thereinbefore described for the sum of $5,500 in cash, and directed the petitioner, in case of such sale, to retain the proceeds of such sale in a separate fund, not to be distributed until the further order of this court made herein. That petitioner, pursuant to said order, did sell said property for the said sum of $5,500, which sale was approved by the court, and petitioner has since held, and still holds, the said sum of $5,500 in a separate fund as per said order. That on the same date, upon the filing of said petition, an order to show cause was duly issued, and thereafter, on, to wit, on the 22d day of April, A. D. 1910, was duly served upon the mortgagee, T. E. Wells & Co., requiring said mortgagee to show cause why the proceeds of the said sale should not be placed with the other cash assets in the hands of the trustee and made available for distribution among the general creditors, which said order was returnable before the referee on the 2d day of May, A. D. 1910, and on that date the said mortgagee, T. E. Wells & Co., appeared specially by its attorney, A. B. Kittredge, Esq., appearing specially for the purpose of objecting to the jurisdiction of the referee over it, or over the subject-matter mentioned in said order and in the petition and application upon which the same was based, and for the further reason that the referee had no jurisdiction summarily to grant the relief therein demanded, but that the said subject-matter could only be considered, and the relief sought granted, if at all, in a plenary action, instituted in a court of competent jurisdiction.

Thereupon, on the same date, the referee duly made an order overruling the plea of said T. E. Wells & Co. to the jurisdiction. Omitting the formal part of the order, it is as follows:

"A. B. Kittredge appearing for T. E. Wells & Co. specially, and for the purpose of objecting to the jurisdiction of the referee in this matter only, and having filed his objections in writing, and Messrs. Boyce & Warren appearing for the trustee, W. Z. Sharp, it having been conceded in open court before the referee that on the 23d day of July, 1909, and prior to the filing of the petition in bankruptcy in the above-entitled matter, that T. E. Wells & Co. were in possession of the elevator described in the petition, claiming their right of possession under a chattel mortgage previously given by the bankrupt, and proceeding under the laws of the state of Iowa to foreclose said mortgage, and that the foreclosure of said mortgage was enjoined by the judge of this court by an order made in the proceeding then pending before him, dated the 7th day of August, 1909, and that said T. E. Wells & Co. were claiming possession under and by virtue of said mortgage and the conditions and provisions thereof, and that said foreclosure was being made in pursuance of the conditions of said mortgage, and that T. E. Wells & Co. continued in possession of said property up to the 25th of September, 1909, upon which date the referee made an order, notifying said T. E. Wells & Co. to turn over the possession of said property to W. Z. Sharp, trustee, it was not conceded, however, by counsel for the trustee, that said mortgage was a valid mortgage and that pursuant to the order of September 25, 1909, the trustee obtained possession of the property described in this order and petition, and the referee being fully advised in the premises, and having heard the arguments of counsel, it is ordered that the plea to the jurisdiction of the referee, filed herein on the 2d day of May, A. D. 1910, be and the same is hereby overruled."

Thereupon, on the same date, there was duly filed a petition for review of the above order, made by said referee, overruling the plea of T. E. Wells & Co., to jurisdiction, which petition for review was in all respects sufficient to raise the entire question of the jurisdiction of the referee to dispose of the rights claimed by the mortgagee in said property in the manner above set forth.

That on the same date there was filed in the office of the clerk of this court a certificate of the referee, certifying the same up for review, and thereafter Hon. John E. Carland, then presiding judge of this court, on, to wit, the 16th day of May, A. D. 1910, duly made and there was entered an order affirming said order of the said referee, and overruling the plea of T. E. Wells & Co., to jurisdiction, which said order is as follows:

"Now, to wit, on this 16th day of May, 1910, the petition of T. E. Wells & Co. for review of the order made in the above-entitled matter by Hon. Henry A. Muller, referee in bankruptcy, in which order said referee overruled the plea of T. E. Wells & Co. to the jurisdiction of this court, which plea was filed in this court before the said referee on the 2d day of May, 1910, said order having been made and entered in said court on the 6th day of May, 1910, and the said petition for review having been filed therein on said 6th day of May, 1910, and said order and petition, with the proceedings before the said referee in reference to the subject-matter leading up to the making of said order having been filed in this court, together with the petition for review, on the 9th day of May, 1910, said matter now coming on regularly for hearing, A. B. Kittredge, Esq., appearing specially on behalf of T. E. Wells & Co. in support of said petition for review, and Messrs. Boyce & Warren appearing on behalf of the trustee in bankruptcy, the court having heard the argument of counsel, and being fully advised in the premises, it is ordered

and adjudged that the said order of the referee be, and the same is hereby, in all things affirmed.

"Done in open court at Sioux Falls, in said district, this 16th day of May, 1910.

"By the Court:                          [Signed]   John E. Carland, Judge.

"Attest:   Oliver S. Pendar, Clerk.
       "By Odin R. Davis, Deputy."

That thereafter, on, to wit, the 23d day of June, A. D. 1910, after the order of the referee had been duly affirmed by Hon. John E. Carland, then judge of this court, the petition above referred to, as amended, was duly brought on for hearing, before the referee, upon stipulation of the parties.

And the said T. E. Wells & Co. thereupon, by its answer—

"specially appearing under protest for the purpose of this plea and no other, says that this court and Hon. Henry A. Muller, referee in bankruptcy, has no jurisdiction over it, the said T. E. Wells & Co., or over the subject-matter mentioned in said order and in the petition, and in the amended petition and application upon which the same is based, and has no jurisdiction summarily to grant the relief therein demanded, but that the said subject-matter can only be considered and the relief sought granted, if at all, in a plenary action instituted in a court of competent jurisdiction. And for the further reason that the relief sought in said amended petition, on the grounds therein stated, is not to recover property from the bankrupt while insolvent as preference, or to defraud creditors, and is not to avoid a transfer of the property named, by the bankrupt, within the provisions of the bankruptcy act and the amendments thereto, but is solely for the determination of the allegations that the mortgage in said petition mentioned was not authorized by the board of directors of said bankrupt, and was not countersigned by the secretary of said corporation, as its by-laws provide."

Further:

"That the referee has not jurisdiction to determine said questions or either of them, and that the said T. E. Wells & Co. has not consented, and does not consent, that this proceeding may be brought or prosecuted against it in this court or before the said referee."

The said T. E. Wells & Co. upon the same date filed a further answer to the amended petition, with certain admissions, and alleged that, under and by virtue of the chattel mortgage above referred to, it took actual possession of the property above described as two certain elevators, and remained in the actual, exclusive, and adverse possession thereof until on or about the 25th day of September, A. D. 1909, at which time possession of said property was taken from it by virtue of an order made in this court, which, among other things, provided that said property should be sold free and clear of incumbrance, and the title thereof transferred absolutely to one Sam Walter, and that the lien of the said T. E. Wells & Co. by virtue of said mortgage and possession as aforesaid be transferred to the proceeds of sale of said property, subject to all the rights which the said T. E. Wells & Co. then had by virtue of its possession of the property above described, and its rights obtained under and by virtue of its said mortgage and the orders of this court thereinbefore entered in this matter.

The answer further admitted that the mortgage was signed by J. G. Walter, the president of said bankrupt company, and by him de-

livered to the agent of said T. E. Wells & Co., and alleged that said mortgage was made under the corporate seal of the bankrupt company, and that the said Walter was fully authorized and empowered to execute, and deliver the same; that, if the by-laws set forth in the petition existed, said T. E. Wells & Co. had no knowledge whatever of them at the time of the taking of the possession of said property described in said chattel mortgage, or at any time prior to reading said amended petition, and demanded strict proof.

Said answer further alleged that the said mortgage is valid and binding upon the said bankrupt and the trustee herein; that said J. G. Walter was at all times the general manager in charge of all the affairs of said bankrupt corporation, and exercised all the functions and powers of the board of directors with the full knowledge, approval, and acquiescence of said board of directors; that said corporation received and retained all the benefits of said loan of $5,000 without objection, rescission, or disaffirmance, and that it would be inequitable and unjust to hold, and said bankrupt corporation is estopped from asserting that the said J. G. Walter was without authority to execute and deliver the said mortgage, and thereupon, insisting upon its plea to the jurisdiction of the court, asked the dismissal of the proceeding and the amended petition.

The referee, having heard the evidence in the premises, made the following findings of fact, conclusions of law, and order (omitting title):

"The order to show cause in the above-entitled matter why the lien claimed by T. E. Wells & Co. upon the proceeds of the sale of the grain elevators at Doon, Lyon county, Iowa, by virtue of a mortgage claimed to be held by them upon said property, should not be adjudged to be void and of no effect, and why the proceeds of the sale of said property should not be placed with the other cash assets held by the trustee in bankruptcy of said estate, and made available for distribution among the general creditors of the said bankrupt, which order was returnable in this court on the 2d day of May, 1910, having come on regularly to be heard before Hon. Henry A. Muller, referee, in pursuance with said order, the said trustee as petitioner appearing in person, and by his attorneys, Messrs. Boyce & Warren, and the said T. E. Wells & Co. appearing by their attorneys A. B. Kittredge, Esq., and Edward Sonnenschein, Esq., and the court having heard the testimony adduced in support of said petition and in opposition thereto, and having heard the arguments of counsel and being fully advised in the premises, makes the following findings and conclusions:

"Findings of Fact.

"1. W. Z. Sharp, the petitioner in the above-entitled matter, was at the time of making said petition, and still is, the duly appointed, qualified, and acting trustee of the above estate.

"2. Among the assets of said estate which came into the hands of said trustee were the following: The grain elevator at Doon, Lyon county, Iowa, known as the 'north elevator,' and the grain elevator at Doon, Lyon county, Iowa, known as the 'south elevator,' which elevators were a part of a line of elevators which had been operated by the bankrupt for some time prior to the filing of the petition in bankruptcy herein.

"3. The bankrupt was incorporated under the laws of the state of South Dakota, and was engaged in the business of buying and selling grain in a line of elevators situated, part in Iowa, part in Minnesota, and part in South Dakota, with its principal place of business at Sioux Falls, S. D.

"4. That there was at the time of the adjudication of bankruptcy herein of

record in the office of the register of deeds of Lyon county, Iowa, in book 125, of Chattel Mortgages, on page 409, a pretended mortgage dated June 21, 1909, purporting to be executed by the Plymouth Elevator Company by its president, J. G. Walter, securing five notes of the Plymouth Elevator Company for $1,000, each dated September 1, 1908, with interest at the rate of 6 per cent. per annum, payable annually from the 1st day of September, 1908, and all maturing June 1, 1909, payable to T. E. Wells & Co.. which mortgage described the property described in finding No. 2 hereof, and by its terms pledged said property as security for the payment of said notes.

"5. That on or about the 23d day of July, 1909, said T. E. Wells & Co. commenced foreclosure of said pretended chattel mortgage, and advertised the property described therein to be sold at public auction on the 9th day of August, 1909, at 10 o'clock a. m.

"6. That on the 7th day of August, 1909, an order was duly issued out of the District Court of the United States for the District of South Dakota, Southern Division, restraining the said T. E. Wells & Co., their agents and attorneys, from taking any further proceedings in the foreclosure of said chattel mortgage until the further order of said court.

"7. That said mortgage was signed by J. G. Walter, the president and general manager of the Plymouth Elevator Company, and the seal of the corporation was affixed to said mortgage by the said Walter, and the said mortgage was by the said Walter delivered to the agent of T. E. Wells & Co.

"8. That no meeting of the board of directors was ever held at which the giving of said mortgage was authorized or considered, and no action was ever taken by the board of directors of the Plymouth Elevator Company in reference thereto, and said mortgage was executed and delivered by the said J. G. Walter without the authorization or assent of any other member of the board of directors, and the mortgage was neither attested nor countersigned by the secretary.

"9. On the 20th day of September, 1909, an order was made and entered by this court authorizing the trustee to sell the said property hereinbefore described for the sum of fifty-five hundred dollars ($5,500) in cash, and directing the said trustee, in case of such sale, to retain the proceeds of such sale in a separate fund not to be distributed until the further order of this court made herein, and the said trustee, pursuant to such order, sold said property for the said sum of fifty-five hundred dollars ($5,500) free of incumbrance, and said sale was upon due notice to the said T. E. Wells & Co., and without objection by the said T. E. Wells & Co. approved by this court, and the said sum of fifty-five hundred dollars ($5,500) was placed in a separate fund as directed by said order, and is now so held by him.

"10. That article seven of the by-laws of the bankrupt corporation provides: 'It shall be the duty of the secretary to keep an accurate minuted account of all meetings of said corporation, retain in his custody all the books, records, vouchers and documents belonging thereto, and to safely and properly keep the same, countersign all certificates of stock, deeds, notes, and mortgages, etc., and to keep a proper record of all transfers thereof, and generally to do and perform all acts usually performed by such officers.'

"11. Article 4 of the by-laws of said corporation provides that 'the board of directors shall have the management of the affairs and business of the corporation, but may empower the president and secretary to perform all necessary acts for the conduction of said business.'

"12. No action was ever taken by the board of directors in pursuance of the article in the finding last above set forth.

"13. Article 5 of the by-laws defines the duties of the president as follows: 'It shall be the duty of the president to preside at all meetings of the corporation if present, sign all minutes of meetings, and in the name of said corporation execute all necessary papers, deeds, notes and mortgages, etc., and to have surveillance of all elevators, grain, live stock, real estate and merchandise belonging to said corporation; he shall also have the power and authority and it is hereby made his duty to employ all necessary help for the conduction of the elevators of said corporation and to discharge the same when he deems necessary; also to fix their compensation and to generally supervise

the entire business of said corporation, and he shall receive as full compensation for the faithful discharge of his duties as such officer an annual salary to be fixed by the board of directors at their annual meeting in each year.'

"14. No money or other consideration passed from T. E. Wells & Co. to the Plymouth Elevator Company in consideration of the giving of said mortgage, and said mortgage was given solely to secure the five $1,000 notes, all of which were past due at the time the mortgage was given.

### "Conclusions of Law.

"From the foregoing findings of fact the court concludes:

"That the petitioner is entitled to judgment and decree of this court that the mortgage to T. E. Wells & Co. described in the foregoing findings is void, and that the proceeds of the sale of the property described in said mortgage. to wit, the sum of fifty-five hundred dollars ($5,500) in the hands of the trustee as the proceeds of said sale be placed among the general funds of said estate.

"Done at Sioux Falls, S. D., this 27th day of September, 1910.

"[Signed]   Henry A. Muller, Referee."

## Order (omitting title):

"The order to show cause in the above-entitled matter why the lien claimed by T. E. Wells & Co., upon the proceeds of the sale of the grain elevators at Doon, Lyon county, Iowa, by virtue of a mortgage claimed to be held by them upon said property, should not be void and of no effect and why the proceeds of the sale of said property should not be placed with the other cash assets held by the trustee in bankruptcy of said estate, which order was returnable in this court on the 2d day of May, 1910, having come on regularly to be heard before Hon. Henry A. Muller, referee, in pursuance of said order, the said trustee as petitioner appearing in person and by his attorneys Messrs. Boyce & Warren, and the said T. E. Wells & Co. appearing by its attorneys, A. B. Kittredge, Esq., and Edward Sonnenschein, Esq., of Chicago, Ill., the court having heard the testimony adduced in support of said petition and in opposition thereto, and having heard the arguments of counsel, and having made and filed its findings of fact and conclusions of law herein, from which it appears that the petitioner is entitled to judgment as hereinafter set forth.

"It is adjudged and decreed that the chattel mortgage recorded in the office of the register of deeds of Lyon county, Iowa, in book 125 of Chattel Mortgages, on page 409, dated June 21, 1909, securing five notes of said bankrupt for one thousand dollars ($1,000) each, dated September 1, 1908, and due June 1, 1909, purporting to be executed by the Plymouth Elevator Company by J. G. Walter, its president, and in which T. E. Wells & Co. is named as mortgagee, and describing the grain elevator at Doon, Lyon county, Iowa, known as the 'north elevator,' and the grain elevator at Doon, Lyon county, Iowa, known as the 'south elevator,' be, and the same is hereby, adjudged to be void and of no effect.

"And it is further adjudged and decreed that the proceeds of the sale of said property made by the said trustee with the approval of this court, to wit, the sum of fifty-five hundred dollars ($5,500) be placed by the trustee among the cash assets of said estate free from the lien of said mortgage, and distributed among the creditors, and that the claim of T. E. Wells & Co. be allowed as an unsecured claim, and receive the same dividends as other creditors of the same class.

"Dated at Sioux Falls, S. D., September 27, 1910.

"[Signed]   Henry A. Muller, Referee in Bankruptcy."

That on the 7th day of October, A. D. 1910, T. E. Wells & Co. filed its petition for review of the foregoing findings and order of the referee, and the same is here upon the objections to the jurisdiction made by the special plea above set forth, and the issues as made by the answer and determined by the referee.

From the foregoing statement of the proceedings before the referee,

191 F.—41

from the beginning of the proceedings in bankruptcy, down to and including the order of the referee last above set forth, brought here for review, it appears that there is now before this court for review the action of the referee in assuming jurisdiction and determining the mortgage of T. E. Wells & Co. null and void, and directing the proceeds of the sale of the mortgaged property, then in the hands of the trustee, placed with the general assets of the bankrupt for distribution to all creditors.

The determination of the contention of the petitioner involves two propositions:

(1) That the District Court of the United States for the District of South Dakota is without jurisdiction to determine a controversy between this trustee in bankruptcy and this mortgagee relative to the distribution of the funds in the hands of this trustee, the proceeds of the sale of the property upon which the mortgagee had a lien by virtue of his chattel mortgage.

(2) Was the chattel mortgage under which this petitioner claimed a valid lien as against this trustee in bankruptcy?

[1] It is undoubtedly the law that the District Courts of the United States sitting in bankruptcy have no jurisdiction over a controversy between a trustee in bankruptcy and an adverse claimant relative to the title or possession of property in the possession of the latter in the absence of his consent.

Such an issue is a controversy at law or in equity, as distinguished from a proceeding in bankruptcy within the meaning of section 23 of the bankruptcy act of A. D. 1898. Act July 1, 1898, c. 541, 30 Stat. 552 (U. S. Comp. St. 1901, p. 3431).

It is admitted that the legal title to this elevator property was in the bankrupt and passed to the trustee of its estate, subject only to the rights of the mortgagee under its mortgage. It is admitted upon the face of the record that prior to the date of the adjudication of bankruptcy the mortgagee took possession of these elevators, under its mortgage, for the purpose of foreclosure, and it appears upon the face of the record that the District Court of this jurisdiction deemed it necessary to preserve the estate and enjoined further proceedings by the mortgagee to foreclose its mortgage. It further appears that thereafter the referee issued an order to show cause to the mortgagee, which was duly personally served upon the mortgagee, and upon the return day thereof, without objection on the part of the mortgagee, an order was entered by said referee providing for the sale of said mortgaged elevators free and clear of the lien of the mortgage, the proceeds to be kept in a separate fund by the trustee, and not to be disbursed until the further order of the referee made therein. It further appears that on the same date, and as a part of the same proceeding, an order was entered requiring the mortgagee to deliver possession of the elevators to the trustee in bankruptcy, and that, pursuant to such order, the mortgagee delivered possession to the trustee, and he, in turn, delivered possession of the elevators to the purchaser, and received $5,500, which has ever since been in his possession. No objection was made or filed and no appeal taken from the action of the referee in directing the sale of said property, or the order directing

the possession of the property to be delivered to the trustee in bankruptcy, and no objections made or appeal taken from the provisions of said orders as above set forth.  After the lapse of more than six months from the date of the receipt of the possession of said sum of $5,500 by the trustee herein, the trustee filed his petition as above stated, stating that the mortgagee claimed a lien upon said moneys, and asking that the same be determined void, and that the property be deposited with the other funds of the estate in the hands of the trustee, and made available for distribution among the general creditors.  An order to show cause was issued upon the filing of said petition, and thereupon the said mortgagee appeared and objected to the jurisdiction as above stated.  The objections were overruled, and thereupon a petition for review was filed raising the jurisdictional questions alone, and was heard by Hon. John E. Carland, then United States District Judge for this District, and the action of the referee in overruling the jurisdictional objections was in all things sustained.  Thereupon, by stipulation. the said petition as amended came on for hearing before the referee upon its merits, and the special plea and the answer above set forth were filed.  And the referee made the findings of fact, conclusions of law, and entered the judgment above set forth.

The controversy upon this review it is apparent from the foregoing statement is over this $5,500, which is, and at the time of the proceedings appealed from was, in the possession of the trustee and under the control of this court.

The first question that naturally arises is, How did the trustee acquire possession of these funds?  The trustee proceeded in a perfectly lawful way, claiming the title to this elevator property, upon due notice to the mortgagee, to secure the possession of the property and secured an order to the mortgagee to show cause why the property should not be surrendered and sold for the offer of $5,500 theretofore made by one who desired to purchase the premises, and the mortgagee having been duly personally served with said order, failing to appear and make any objection or take steps to review such order, thereby submitted to the referee the question of the right of the trustee to sell the elevator property free and clear of the incumbrance of said mortgage, and in turning over the possession of the elevators to the trustee upon the order of the referee made at that time, and for the purpose of consummating the sale acquiesced in the order of sale and the delivery of the property to the purchaser, and the payment of the purchase price therefor to the trustee, to be held by him pursuant to the provisions of the order made by the referee with reference thereto.

The mortgagee, under these conditions, failing to appeal and failing to file a petition for review, cannot question the referee's jurisdiction to examine into the matters presented by said petition and make the order of sale of the property and the order to deliver the property to the trustee.  In re Bacon (C. C. A., 2d Circuit) 159 Fed. 424, 86 C. C. A. 404.

And my conclusion therefore is:

(1) That the trustee lawfully acquired the possession of the said sum of $5,500.

(2) That the rightful custody of this money imposed upon the referee the duty to distribute the same to the persons lawfully entitled thereto.

(3) That this possession and this duty authorized the referee, upon the filing of the petition last above referred to, to, by a notice or order to show cause, require the mortgagee to appear upon a date named therein, and present its claims to the proceeds of the sale of said mortgaged property.

(4) That the referee had jurisdiction to determine the validity of the claim of the mortgagee to the proceeds of the sale of said elevator property.

A court which has lawfully acquired the custody of property or money must of necessity dispose of the same according to law, and, when there are conflicting claims, it is at liberty to dispose of such controversies according to its own ideas of right and justice. Chauncey et al. v. Dyke Bros. (C. C. A., 8th Circuit, Thayer, Cir. Judge) 119 Fed. 1, 55 C. C. A. 579. This court determines this jurisdictional question in the light of the order of Hon. John E. Carland, presiding judge, made on the 16th day of May, 1910, and on that date filed and entered, above set forth in full, in which the order of the referee overruling the plea of T. E. Wells & Co., to the jurisdiction of the court was in all things thereby affirmed. I hold that said order, in effect, determined in this proceeding the jurisdiction of the referee to require the mortgagee to appear upon the date named in the order to show cause and present its claims to the funds in the hands of the trustee, and to order a distribution thereof to the parties found entitled thereto.

I conclude that the record here for review presents a controversy with reference to property properly in the custody of the trustee in bankruptcy, of which a District Court of the United States has jurisdiction. Property in the custody of a court of equity for administration is always held by it in trust for those to whom it rightfully belongs. The jurisdiction to inquire and determine who the lawful owners of it are, and to that end to call before it all claimants by a reasonable notice or order to present their claims to the court within a reasonable time, or to be barred of any right or interest in the property in its custody, or in its proceeds, is a power inherent in every court of equity, incidental and indispensable to the authority to administer the property in its possession and to distribute its proceeds. Chauncey v. Dyke Bros., 119 Fed. 1, 55 C. C. A. 579, 9 Am. Bankr. Rep. 444; In re Rochford, 124 Fed. 182, 59 C. C. A. 388, 10 Am. Bankr. Rep. 608.

[2] As to the second proposition, the record seems to sustain the findings of fact made by the referee herein, and practically without dispute the following facts appeared: On the 21st day of June, 1909, 44 days before the filing of petition in bankruptcy herein, one J. G. Walter, president and general manager of the Plymouth Elevator Company, signed in the name of the Plymouth Elevator Company a mortgage to T. E. Wells & Co., securing five notes theretofore given by the Plymouth Elevator Company to T. E. Wells & Co., dated Sep-

tember 1, 1908, and maturing June 1, 1909, 20 days prior to the signing of the mortgage. The evidence discloses that this mortgage was signed by Walter upon the request of an agent of the mortgagee, and it appears affirmatively that no member of the board of directors or other stockholder had any knowledge of the execution or delivery of the mortgage; that the same was not countersigned by the secretary of the Plymouth Elevator Company; that the by-laws of the Plymouth Elevator Company are as set forth in the statement above; that there had never been any resolution passed by the board of directors or any general authority delegated in any way to the president to execute this or any other mortgage. There is no pretense that there is anything in the by-laws that could be reasonably construed as creating the position of a general manager who would take the place of the board of directors in the matter of the sale or incumbrance of this property. No showing was made or attempted that this was the method adopted by this corporation of doing its business, and, on the other hand, the evidence shows that, when a mortgage was to be executed for a similar purpose, it was authorized on the 10th day of August, 1905, at a regularly called meeting of the board of directors and a resolution was passed authorizing, empowering and directing the president and secretary of the company to make the loan and execute the mortgage.

The evidence shows that on August 29, 1908, another resolution was passed at a regular meeting of the board of directors authorizing a mortgage to another company. The evidence shows that the corporate seal was kept in the main office of the company at Sioux Falls; that it was taken therefrom by the son of the president, and was by the president affixed to the mortgage. There is no evidence that any of the directors other than the president ever had any knowledge of the giving of the mortgage prior to the filing of the petition in bankruptcy, or at any time, and it affirmatively appears from the evidence that no directors knew of the mortgage at the time it was given. The evidence shows that by-law (article 4) of this corporation, bankrupt, provided:

"The board of directors shall have the management of the affairs and business of the corporation, but may empower the president and secretary to perform all necessary acts for the conduction of said business."

Article 7 provides:

"It shall be the duty of the secretary to keep correct minutes of all meetings of the corporation, retain in his custody all books, records, vouchers and documents belonging thereto, and to safely and properly keep the same, countersign all certificates of stock, deeds, notes, mortgages, etc., and to keep a proper record of all transfers thereof."

The minute book shows no action of the corporation either expressly or by implication authorizing Walter to execute this mortgage. Walter, in his testimony, expressly says no action was taken by the board of directors except as shown by the minute book. There are no facts shown upon which a ratification can be claimed. In the light of this evidence, is petitioner's mortgage a valid lien upon the property?

Section 434 of the Revised Civil Code provides:

"The corporate powers, business and property of all corporations formed under this chapter must be exercised, conducted and controlled by a board of not less than three nor more than eleven directors, to be elected from among holders of stock, or where there is no capital stock, then from the members of such corporation. * * * Unless a quorum is present and acting no business performed or act done is valid as against the corporation. * * *"

Section 435, Id., provides:

"Immediately after their election the directors must organize by the election of a president, who must be one of their number, a secretary and treasurer. They must perform the duties enjoined on them by law and the by-laws of the corporation. A majority of the directors is a sufficient number to form a board for the transaction of business, and every decision of a majority of the directors, forming such board, made when duly assembled, is valid as a corporate act."

The foregoing sections of the statutes of South Dakota were construed by the Supreme Court of the state in Des Moines Manufacturing & Supply Co. v. Tilford Milling Co. et al., 9 S. D. 542, 70 N. W. 839. It was there held that the corporate powers of a corporation being vested in its board of directors by the statute above quoted, its officers have no power to bind it by contracts not authorized by the directors. It was further held that one dealing with the officers of a corporation acting in its name as in this case is chargeable with notice of the limit of the officer's powers and the limit of authority to bind the corporation.

I can find nothing within the evidence in this case bringing it within the rule laid down by the Supreme Court of the state of South Dakota in Davis v. Brown County Coal Co., 21 S. D. 173, 110 N. W. 113, no intent and no attempt on the part of the board of directors either with a formal resolution or without one to delegate to Walter the power to make the contract in question, and in that case the corporation's board of directors knew of, and acquiesced in, the oral agreement made by the corporation's president for the continuance of the operations of the company. In this case no member of the corporation's board of directors or stockholders knew of the giving of this mortgage. Upon a careful review of the evidence certified with the record in this case, I concur in the findings of fact and conclusions of law made by the referee herein, and can find no error in the order brought here for review.

The order of the referee brought here for review is hereby in all things affirmed.