### In 're TOWNE et al.

(District Court, D. Massachusetts. March 26, 1903.)

No. 3,748.

1. BANKRUPTCY—FRAUDULENT STATEMENT IN SCHEDULE.
    A statement by a bankrupt in his schedule that a life insurance policy was payable to his wife, when in fact it was an endowment policy, payable to his wife in case of his death, but to himself if he lived to the end of the term, which was less than two years after the filing of his petition, *held* to have been made in bad faith for the purpose of misleading creditors, when considered in connection with other acts tending to show that the misleading statement was intentional.

2. SAME—RIGHT TO PROVE DEBT AFTER EXPIRATION OF YEAR—FRAUD OF BANKRUPT.
    Bankr. Act July 1, 1898, § 57n, 30 Stat. 561, c. 541 [U. S. Comp. St. 1901, p. 3444], providing that "claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication," except in certain specified cases, should not be so construed as to prevent proof of a valid claim after the expiration of a year, where objection is not made by any other creditor or by the trustee, but by the bankrupt alone, and where the delay was caused by his own fraud in so misstating facts in his schedule as to make it appear that there was no estate for distribution, in consequence of which but a single small claim was proved within the year.

In Bankruptcy. On review of decision of referee rejecting proof of claim.

Irwin & Hardy, for creditor.
W. F. Kimball, for bankrupt.

LOWELL, District Judge. A creditor seeks to prove a debt after the expiration of a year from the filing of the petition. Objection thereto is made by the bankrupt alone. The contention of the peti-

tioning creditor is this: That the bankrupt, by a false and fraudulent statement in his schedule, led the creditor to believe that there was practically no estate for distribution, so that the creditor omitted to prove his debt; that thereafter the bankrupt turned over to his trustee the property fraudulently misdescribed in his schedule, with the intention that the property which he concealed, after payment in full of the only proved debt—a very small one—should be returned to him free from all the claims of his creditors. The bankrupt's discharge was granted before these facts were known to the creditor or brought to the attention of the court.

In order to sustain his contention, the creditor must establish two propositions, one of fact and one of law: First, that the bankrupt's statement in his schedule was fraudulently made; and, second, that, if creditors are led by a false and fraudulent schedule of the bankrupt not to prove their claims within a year, they may prove them thereafter as against an objection made by the bankrupt alone.

1. The bankrupt scheduled, "One policy in United States Life Ins. Co. N. Y. City, for $1,000, payable to Mary E. Towne, wife of debtor." This was in fact a policy on the life of the bankrupt for $1,000 on the 20-year endowment plan, payable, in the event of his death, to his wife, but, if the insured should live to October 15, 1902, payable to him. The petition in bankruptcy was filed November 23, 1900. The statement in the schedule was erroneous, and likely to mislead, inasmuch as it gave no notice of the important rights in the policy which belonged to the bankrupt and to his trustee in bankruptcy. The status of policies more or less like this has been so much discussed and doubted, however, that the bankrupt's inaccurate and incomplete statement, standing by itself, does not conclusively establish his fraud or bad faith. The court has to determine if the entry in the schedule was made in honest error or in fraud of creditors. The bankrupt owed the insurance company $150, and had pledged the policy as security for the debt. This debt he omitted from his schedule intentionally. His explanation of the omission was contradictory and unsatisfactory. Had this debt been scheduled, the trustee and the creditors would have been put upon inquiry concerning the nature of the policy in question. The omission is some evidence of fraud. A few months after the adjudication, the trustee made inquiry concerning the policy. The local agent of the insurance company refused to give him any information. From the office of the company in New York he obtained the necessary details, but then took no further action. The creditors had no notice of the discovery. Smith, a proving creditor, not concerned in the present petition, sought to interrogate the bankrupt with a view to discovering concealed property, or to prevent a discharge, either or both. The inquiry was continued from time to time until after the expiration of the year, when the bankrupt procured his brother to buy off Smith. The bankrupt having petitioned for his discharge, the trustee, as required by the practice in this district, filed a report upon the petition. This report objected to the discharge on the ground that the bankrupt had not kept proper books, that he had concealed property generally, and that he had bought off the creditor Smith.

No mention of the insurance policy was made in the trustee's report. The bankrupt tried to get the trustee to recall or amend this report, and finally they agreed that, if the bankrupt would turn over the policy to the trustee, the trustee would recommend his discharge. Why objections which had not been met should be withdrawn upon the removal of an objection which had not been made has not been explained. The policy was turned over accordingly, the discharge was recommended, and was granted without serious contest.

The original misstatement made by the bankrupt concerning the insurance policy, whether made in honest error or in fraud, certainly tended to prevent creditors from proving their debts. The bankrupt's share of the policy belonged to his creditors, however the policy was scheduled; and, had he been actuated by an honest desire to carry out the purposes of the bankrupt act, he would have delivered the policy up to the trustee for the creditors' benefit as soon as its status was pointed out to him; or, if he doubted the legal right of the trustee, he would not have sought to prevent his creditors from sharing in the fund when the trustee's title was established. Even if he originally misled his creditors in good faith, yet he is now seeking to take advantage of his mistake, and to prevent his creditors from sharing in property which would have been divided among them had they not been misled by his original error. The law may, in some cases, permit a bankrupt to avail himself of a technicality which defeats the reasonable operation of the bankrupt law. If this bankrupt has throughout acted in legal good faith, though he seeks to profit by his original error, it may be that his attempt will be successful. His conduct, however, requires closer scrutiny than would that of a bankrupt contending for something morally fair and reasonable. Upon the whole, considering the misdescription in the schedule, the apparent attempt to mislead by omitting the debt to the insurance company, the buying off of the creditor Smith when his inquiry threatened to be inconvenient, and the peculiar dealings with the trustee, I find that the bankrupt's schedules were not prepared in good faith, but with an intent to mislead the creditors, which attempt he now seeks to make effectual.

2. The court has next to consider if the bankrupt can prevent the allowance of a claim offered for proof after the expiration of a year, where the delay was caused by his own fraud. The language of section 57n of the statute (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444]) is unqualified, but cannot, I think, be intended to govern in a case like this. The decided cases were concerned with the right of a tardy creditor to prove in competition with creditors who had been diligent, not with the right of a bankrupt to prevent the payment of a creditor whose tardiness had been caused by the bankrupt's own fraud. In re Leibowitz (D. C.) 108 Fed. 617; In re Rhodes (D. C.) 105 Fed. 231; In re Hawk, 52 C. C. A. 536, 114 Fed. 916; In re Moebius (D. C.) 116 Fed. 47; Bray v. Cobb (D. C.) 100 Fed. 270; In re Shaffer (D. C.) 104 Fed. 982. That all creditors who have duly proved their claims are to be paid in full before the petitioner can receive anything is admitted. As against the bankrupt, the allowance of the proof offered can be supported

upon any one of several grounds, and it is not necessary to determine which ground is the strongest. The act may be construed so as to allow proof of a claim which is valid against the bankrupt, unless objection be made by a creditor or by the trustee who represents him; or it may be held that the act is of general application, but that the bankrupt is here estopped by his fraud from making objection to the proof. Upon whatever ground the decision be rested, a provision of the bankrupt act, primarily intended to effect a speedy settlement of bankrupt estates, should not be construed so as to enable a dishonest debtor by perjury to avoid his obligations while concealing his property from his trustee. It is not necessary to decide what would be the petitioner's rights if he had been misled, not by the fraud of the bankrupt, but by the bankrupt's honest mistake. It is no answer to the creditor's contention to say that the bankrupt has become liable to a criminal prosecution. This will not pay the creditor, and, besides, the prosecution may be barred before the fraud is discovered.

Judgment of the referee reversed, and matter remanded to him, with direction to proceed in accordance with this opinion.