### CHAPMAN v. WHITSETT et al. *

(Circuit Court of Appeals, Eighth Circuit. October 16, 1916.)

#### Nos. 4573-4576.

1. BANKRUPTCY ⬤328—PROOF OF CLAIM—TIME FOR PROVING CLAIM.
    Under Bankr. Act, July 1, 1898, c. 541, § 57n, 30 Stat. 560 (Comp. St. 1913, § 9641), requiring claims to be proved within one year after adjudication, creditors who did not prove their claims because no assets were scheduled as available cannot, years subsequent, proceedings having been reopened on the ground of concealment of assets, prove their claims.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 518; Dec. Dig. ⬤328.]

2. TRUSTS ⬤63½—DECLARATION OF TRUSTS—WRITTEN INSTRUMENTS.
    Under Rev. St. Mo. 1909, § 2868, providing that all declarations of trust shall be proven by some writing, signed by the party, declaring such trust, or they shall be void, a devise of land absolute in form, confirmed and made final by the probate of the testator's will, without any contest within the statutory period therefor, cannot be defeated by the assertion of an oral promise by the devisee to hold the land in trust for another.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 93; Dec. Dig. ⬤63½.]

3. TRUSTS ⬤63¾—RESULTING TRUST—CREATION.
    Under Rev. St. Mo. 1909, § 2869, relating to trusts resulting where the consideration for a conveyance is paid by one and title is taken in the name of another, no trust results in favor of a son, where his father, upon the son's bankruptcy, devised property to the son's wife, which he had intended to leave to the son, for the son had no right to the property and paid no consideration therefor.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 91, 92, 98, 99, 100; Dec. Dig. ⬤63¾.]

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied January 13, 1917.

4. TRUSTS ⚙⟹375(1)—RESULTING TRUST—RECOGNITION—JUDGMENT.

Upon his son's bankruptcy, a father devised to the son's wife land which he had intended to leave to the son. Some time after the conclusion of the bankruptcy proceedings and the settlement of the estate, the wife conveyed the land to her husband. Thereafter she sued to set aside the conveyance on the ground of fraud and undue influence, and the husband set up a secret trust in his favor. A consent decree, whereby the wife received the rents from the portion of the property was entered. *Held* that, as the decree was conditional upon the wife's withdrawing her suit and was by way of compromise, there was no judicial recognition of a resulting trust, which would entitle creditors of the husband, who asserted that in bankruptcy proceeding assets had been concealed, to reach the interest received by the wife under the decree.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 613, 615; Dec. Dig. ⚙⟹375(1).]

Appeals from the District Court of the United States for the Western District of Missouri; John C. Pollock, Judge.

In the matter of the bankruptcy of Arthur Chapman. From an order denying leave to prove its claim on reopening of the proceedings, the Interstate Trading Company, a corporation, appeals. Suits by George P. Whitsett, trustee, and by Joseph M. Jones, trustee, against Jessie W. Chapman. From the decree, each party severally appeals. Order denying leave to creditor to prove its claim affirmed, decree reversed, and cause remanded.

E. J. Geittman and New, Miller, Camack & Winger, all of Kansas City, Mo., for Jessie W. Chapman.

Charles M. Howell and Joseph S. Brooks, both of Kansas City, Mo., for Arthur Chapman.

I. J. Ringolsky and H. S. Julian, both of Kansas City, Mo., for trustees and Interstate Trading Co.

Before HOOK and ADAMS, Circuit Judges, and ELLIOTT, District Judge.

HOOK, Circuit Judge. These appeals in bankruptcy involve the right of certain creditors of Arthur Chapman, bankrupt, to prove their demands, and also the claim of the trustees to the interest of his former wife, Jessie W. Chapman, in property devised to her by her father-in-law, Andrew L. Chapman, deceased.

[1] Arthur Chapman, a son of the testator, became bankrupt twice, once on his voluntary petition in February, 1904, and again in an involuntary proceeding January, 1913. In the first proceeding he scheduled no assets available to creditors, and but few of them proved their claims. He was discharged in January, 1905, and the case was closed. It was reopened in May, 1913, upon the petition of creditors, upon the ground of a fraudulent concealment of assets, and George P. Whitsett was appointed trustee. Joseph M. Jones is the trustee in the second bankruptcy proceeding. The Interstate Trading Company is one of the creditors who at the time of the first proceeding failed to prove their claims and are now asking to do so. The trial court denied them relief. The other creditors similarly situated are in the court below awaiting the result of the appeal of that company. This matter may be disposed

of at once. With some exceptions, not material here, the limitation of one year after the adjudication, prescribed by section 57n of the Bankruptcy Act for proof of claims, is definite and conclusive. The period is not enlarged or started anew by the discovery of unscheduled assets. In re Peck, 93 C. C. A. 470, 168 Fed. 48; In re Meyer (D. C.) 181 Fed. 904; In re Paine (D. C.) 127 Fed. 246.

[2] The other question depends upon whether the devise of property to Mrs. Chapman by the bankrupt's father in May, 1903, was upon a trust in favor of the bankrupt, enforceable by him or by his trustees in bankruptcy. Mrs. Chapman still retains an interest in that property, which at the instance of the trustees the trial court subjected to the claims of creditors, excepting those which might have been, but were not, proved in the first proceeding. The contention of the trustees is that the devise to Mrs. Chapman was in secret trust for the bankrupt, the testator's son, to be executed at his request; that the trust was enforceable under the Missouri laws, and was actually executed by her after his discharge in the first proceeding. The will was made and probated without objection or contest about ten months before that proceeding was begun. The testator's will, which theretofore had given the bankrupt a third share equal to that of each of his two brothers, was changed so that his share went to Mrs. Chapman to hold "in her own right," without qualification.

It is urged that the testator was induced to make the change because of the existing insolvency of the bankrupt and by her verbal promise to the testator to convey to the bankrupt whenever he desired. There is no contention that she solicited the testator to do so, or exercised undue influence upon him, or committed a fraud other than by her bare insistence upon a right in conflict with the alleged promise. We think the case is clearly within section 2868, Rev. Stat. Mo. 1909, which provides that:

"All declarations or creations of trust or confidence of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts, or by his last will, in writing, or else they shall be void."

A devise of an estate in lands absolute in form, confirmed and made final by the probate of the will, without contest within the statutory period therefor, cannot be defeated by the assertion of an oral promise by the devisee to the testator to hold in trust for another. Such an insecurity of title is within the very condition which the statute was designed to guard against. The attack upon the manifest purport of the will not only assails the effect of the probate (Stowe v. Stowe, 140 Mo., 594, 41 S. W. 951), but seeks to accomplish by oral proof what should have been declared by the testator in his will or by the devisee in writing (Price v. Kane, 112 Mo. 412, 20 S. W. 609).

[3, 4] By the testator's devise to Mrs. Chapman there was no diversion of assets of the bankrupt to which his creditors had a right to look. If the property had been his, and he had conveyed it in anticipation of bankruptcy, they might have complained. But it was not his in law or equity, and had never been. It belonged to the testator, with the ab-

solute right of disposition. He could either disinherit his son or so give him the benefit as to withhold it from his creditors as by a spendthrift trust. Shelton v. King, 229 U. S. 90, 33 Sup. Ct. 686, 57 L. Ed. 1086. The mere expectancy of inheritance by a son is not an asset for his creditors. It must so mature into a concrete form as to be susceptible of enjoyment or enforcement by him, and their right is measured by his. There was no resulting trust under section 2869, Rev. Stat. Mo. 1909. There was no fraud by Mrs. Chapman, nor payment of consideration by the bankrupt, as in the ordinary cases under that section.

But it is said Mrs. Chapman actually executed the trust by conveying her interest in the property, and her conveyance was confirmed by a decree of a state court at Kansas City. It is true that in May, 1906, three years after the death of the testator and more than a year after the discharge of the bankrupt in the first proceeding she executed a deed to him and he later deeded to the Arthur Chapman Investment Company, a corporation he organized. We see nothing of controlling significance in her conveyance. It was not expressed as being in execution of a trust, and in the circumstances of the case we think it quite as attributable to the desire of a wife with minor children to keep her family together and to put importunities at rest. In the fall of 1908, when the relations between the couple became openly strained, she brought suit in the state court against the bankrupt, the Investment Company, and others to annul the conveyance as having been obtained from her by fraud and undue advantage in her sickness. In answer, a secret trust based on her alleged promise to the testator and the execution thereof by the conveyance were set up in defense. In April of the following year, 1909, a contract of compromise and settlement of the suit and all matters of dispute was executed by Mrs. Chapman, the bankrupt, and the Investment Company. It provided that the title to the property should be confirmed in the company, the bankrupt's grantee, subject to a charge upon the rentals accruing from one of the tracts, securing the payment to her of a fixed sum during her life. Her suit to set aside the conveyance was to be disposed of by a decree in favor of defendants either by stipulation or upon hearing, at the option of the bankrupt, and in form to be approved by counsel for the parties. Various other provisions were made, which are not important here. The contract concluded with this clause:

"Performance of the above provisions by the parties shall be concurrent, and each shall be contingent upon the performance of the others."

On the same day another instrument was executed, securing her interest by a charge upon the rents, and a decree was entered in the state court containing a finding that the title to the property was vested in the Investment Company by conveyances from her and the bankrupt, and adjudging that she "take nothing by her petition herein filed and that the same be dismissed." The decree recited that the cause came on "to be heard on the pleadings and all the parties plaintiff and defendants consenting and agreeing thereto." The lease, upon the rentals of which the interest of Mrs. Chapman was secured, failed, so in

December, 1911, the matter was adjusted by payment to her of a lump sum and a contract for a less monthly sum than before, secured by a trust deed upon a third interest in another of the tracts of land which had belonged to the testator. This was more than a year before the second proceeding in bankruptcy was begun or the reopening of the first proceeding.

It is this interest of Mrs. Chapman and the payments to her which the trustees in bankruptcy now seek to reach. They rely upon the decree of the state court sustaining her conveyance of the estate she derived by the will, and interpret it in the light of the answer to her suit. But manifestly the decree was by consent, without trial upon proofs, and it was subject to a concurrent reservation to her of an interest in the property. It was not an adversary decree, by which she was defeated. She did not take what she got by gift of her husband and his investment company. In a give and take compromise and settlement of that kind, a creditor of one of the parties cannot go in and pick out what he likes, leaving the rest as undesirable. The parties were competent to contract; their mutual engagements were lawful and should be regarded as an entirety. There was recognition in the decree of a compromise, and the leaving of the title to the property in controversy where it apparently stood was a matter of convenience, rather than an adjudication against her, which precluded the exhibition and assertion of the other formal instruments concurrently executed.

The order denying relief to the Interstate Trading Company is affirmed. The decree of May 14, 1915, is reversed, and the causes are remanded for further proceedings in conformity with this opinion.