## BURTON COAL CO. v. FRANKLIN COAL CO. et al. (two cases).
### Nos. 9763, 9784.

Circuit Court of Appeals, Eighth Circuit.
Nov. 9, 1933.

John H. Hershberger, of Chicago, Ill., and F. E. Williams, of St. Louis, Mo., for appellant.

Boyle & Priest, George T. Priest, and Robert E. Moloney, all of St. Louis, Mo., for appellees.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The Franklin Coal Company was adjudicated a bankrupt on its voluntary petition May 15, 1928. The six-month period for filing claims (Bankruptcy Act, § 57n, as amended by Act May 27, 1926, 11 USCA § 93 (n), expired November 15, 1928. The bankrupt scheduled appellant as one of its creditors in the sum of $5,435.88. Appellant did not file proof of claim within the aforesaid statutory period. May 14, 1931, the president of the bankrupt company died, and it was then discovered that he left an insurance policy in which the bankrupt was named as beneficiary. July 22, 1931, the trustee of the bankrupt estate collected, as the proceeds of this policy, the sum of $9,-364.47. The referee reports that, after paying all allowed claims in full, "there will still remain in the custody of the trustee a substantial sum of money approximating $5,-000.00." Following the collection of said sum of $9,364.47, the trustee of the bankrupt estate and his attorney filed their application and petition for allowance of further fees. The trustee filed his fifth and preliminary report and account showing a balance in his hands of $9,387.18, and represented to the court that, after payment in full of creditors who had proved their claims, and who, it appears, had already received a dividend of

36.89 per cent. thereof, the balance remaining should be returned to the stockholders of the bankrupt company. Pending the hearing of said application and petition, appellant, on October 13, 1931, filed with the referee an intervening petition, alleging an indebtedness to it of $5,435.88 for coal sold and delivered by it to the bankrupt, pointing out that, in the schedules of assets and liabilities filed by the bankrupt, this claim of appellant was specifically listed, and praying that, after payment in full of all creditors who had proved their claims, and after the payment of all expenses of administration, an order be entered directing the trustee to turn over and pay to the intervening petitioner any surplus remaining in the hands of the trustee, to the extent of petitioner's claim, before any part of such surplus funds were paid over by the trustee to the bankrupt company or its stockholders, officers, or directors. The bankrupt, by leave, filed with the referee its "plea to the jurisdiction, answer and counter-claim." Upon the issues thus framed, the referee conducted a hearing, and dismissed the intervening petition of appellant. The referee based this ruling upon his holding that appellant must be barred from participation as a creditor because of its failure to file its claim within the time prescribed by section 57n of the Bankruptcy Act. Upon review, the order of the referee was confirmed by the District Court.

 The two cases appealed are identical. The first was an appeal allowed by the District Court; the second appeal was allowed by this court, and is therefore in any aspect properly before us. Some question is raised as to the equity jurisdiction of the bankruptcy court. That it is a court of equity in the sense that "its judge and referees, in adjudging the rights of parties entitled to their decision, are governed by the principles and rules of equity jurisprudence," is beyond question. Larson et al. v. First State Bank of Vienna, S. D., et al. (C. C. A. 8) 21 F.(2d) 936; In re Rochford (C. C. A. 8) 124 F. 182; In re Ben Boldt, Jr., Floral Co. (C. C. A. 10) 37 F.(2d) 499. It has not, however, plenary jurisdiction in equity, but is confined, in the application of the rules and principles of equity, to the jurisdiction conferred upon it by the provisions of the Bankruptcy Act, reasonably interpreted. Johnson v. Norris (C. C. A. 5) 190 F. 459, L. R. A. 1915B, 884; In re Kane (C. C. A.) 127 F. 552.

 The plain mandate of the law cannot be set aside because of considerations which may appeal to referee or judge as falling within general principles of equity jurisprudence. It must be conceded that a bankruptcy court having a fund in its custody, coming to it in the course of its administration of the bankruptcy estate, has exclusive power to make just disposition thereof. In re Antigo Screen Door Co. (C. C. A. 7) 123 F. 249; In re Rochford (C. C. A. 8) 124 F. 182; In re Goss (D. C.) 43 F.(2d) 746; Berl v. Crutcher (C. C. A. 5) 60 F.(2d) 440; Murphy v. John Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327.

The equity jurisdiction of the court of bankruptcy being unquestioned within the limitations placed upon it by the provisions of the Bankruptcy Act, it remains to consider whether, in the instant case, that jurisdiction has been properly exercised. The claim of appellant is resisted only by the bankrupt corporation. No creditor objects.

The question of the proper disposition of a surplus remaining in the hands of the trustee, after all creditors who have proved their claims, together with costs of administration, have been paid in full, has been before the courts in a number of cases, and the answer has not been uniform. It would appear, however, that the disagreement, depending largely upon differences in the facts presented, has, with few exceptions, been apparent rather than real and substantial.

Counsel for appellant has favored us with a brief displaying much industry and research, and very helpful to our consideration. The main cases upon which reliance is placed to sustain the finding and order of the referee, which was confirmed by the district court, are the following: Chapman v. Whitsett (C. C. A. 8) 236 F. 873, 874; In re Peck (D. C.) 161 F. 762, affirmed under same title (C. C. A. 2) 168 F. 48; In re Silk (C. C. A. 2) 55 F.(2d) 917; In re Meyer (D. C.) 181 F. 904. See also, Remington on Bankruptcy (3d Ed.) pars. 874 and 875. Other cases may be adduced, but the foregoing contain the main considerations, supported by citations upon which their conclusions are based.

Section 57n of the Bankruptcy Act, as amended by Act May 27, 1926, 11 USCA § 93 (n) reads thus: "Claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication; or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after the expiration of such time, then within sixty days after the rendition of such judgment: Provided, That the

right of infants and insane persons without guardians, without notice of the proceedings, may continue six months longer."

Section 65e (11 USCA § 105 (e) provides that "a claimant shall not be entitled to collect from a bankrupt estate any greater amount than shall accrue pursuant to the provisions of this title." In section 66b (11 USCA § 106 (b) this language is found: "(b) Dividends remaining unclaimed for one year shall, under the direction of the court, be distributed to the creditors whose claims have been allowed but not paid in full, and after such claims have been paid in full the balance shall be paid to the bankrupt."

In Chapman v. Whitsett, supra, one Arthur Chapman became bankrupt twice, once on a voluntary petition, and again in an involuntary proceeding. In the first proceeding he scheduled no assets available, and but few creditors proved their claims. He was discharged, and the case was closed. It was reopened eight years later upon petition of creditors on the ground of fraudulent concealment of assets. Certain creditors who had failed originally to prove their claims were asking to do so. The trial court denied relief, and its order was affirmed. Judge Hook, speaking for this court, said: "This matter may be disposed of at once. With some exceptions, not material here, the limitation of one year after the adjudication, prescribed by section 57n of the Bankruptcy Act [11 USCA § 93 (n)] for proof of claims, is definite and conclusive. The period is not enlarged or started anew by the discovery of unscheduled assets. In re Peck, 93 C. C. A. 470, 168 F. 48; In re Meyer (D. C.) 181 F. 904; In re Paine (D. C.) 127 F. 246."

The holding is thus stated in the syllabus: "Under Bankr. Act, July 1, 1898, c. 541, § 57n, 30 Stat. 560 (Comp. St. 1913, § 9641 [11 USCA § 93 (n)]), requiring claims to be proved within one year after adjudication, creditors who did not prove their claims because no assets were scheduled as available cannot, years subsequent, proceedings having been reopened on the ground of concealment of assets, prove their claims."

The District Court (In re Peck, 161 F. 762) held that: " * * * Creditors having provable claims and notice of the bankruptcy and an opportunity to examine the bankrupt, who fail to prove their claims merely because of a statement in his schedules that his assets there listed and described are of no value, are not entitled to prove after the expiration of the year when it has been ascertained that such assets are of value; there being no claim of actual fraud or willful misrepresentation by the bankrupt."

At that time the limitation period of proving claims was one year after adjudication. The Circuit Court of Appeals for the Second Circuit affirmed this order upon the language of section 57n, saying: "Whether or not there may be exceptional cases which would not fall within the statute is a question on which we now express no opinion; but to hold that this clear and imperative provision is to be disregarded whenever a creditor may assert that he was misled because the bankrupt's schedules stated that some particular asset was of little or no value seems to us to be legislation, not construction." In re Peck (C. C. A.) 168 F. 48, 49.

In re Meyer, 181 F. 904, the District Court for the District of Oregon held that: "The court has no power, under Bankr. Act July 1, 1898, c. 541, § 57n, 30 Stat. 561 (U. S. Comp. St. 1901, p. 3444 [11 USCA § 93 (n)]), to permit the proof of claims after the expiration of a year from the adjudication, even though the creditor was misled, and no proof made, because of the fraudulent concealment of assets by the bankrupt, who scheduled no assets."

None of the creditors had appeared, nor had they at any time filed proof of their claims. The above ruling was made upon the application of such a creditor to reopen the estate upon the ground of false and fraudulent concealment of assets in the schedules filed by the bankrupt. The court held that such a petition to reopen could be filed only by one who had an interest and would be benefited thereby; that, for the reasons above stated, the petitioning creditor was not such a person.

The Court of Appeals for the Second Circuit [In re Silk, 55 F.(2d) 917] has very recently passed upon this question in a well-considered opinion. The syllabi read thus:

"Dilatory creditors held not entitled to file claim after expiration of six months from adjudication, though newly discovered asset gave bankrupt's estate prospective surplus (Bankr. Act §§ 2 (8), 57n, 11 USCA §§ 11 (8), 93 (n).

"Bankruptcy Act contemplates return to bankrupt of surplus remaining after satisfaction of regularly allowed claims."

In the body of the opinion Judge Swan says: "Under the statute the court of bankruptcy administers the assets of the bankrupt, not for the benefit of all his creditors, but only for those whose claims are proved

and allowed as specified in the act. It contemplates prompt distribution to creditors who are diligent, the discharge of the bankrupt from his provable debts if he has honestly complied with the statute, and, in our opinion, the return to him of any surplus remaining after satisfaction of regularly allowed claims."

A number of cases are cited in support of this holding, including In re Hoyt, 12 Fed. Cas. 760, No. 6,806. The discussion in the latter opinion convincingly negatives the rulings in Re James, Fed. Cas. No. 7,175 and in Re Haynes, Fed. Cas. No. 6,269, cited by appellant. The two cases last named have very little bearing upon the question now before us in any event, because the Act of March 2, 1867 (14 Stat. 517), contained no such strict period of limitation as that defined in section 57n.

We turn now to the cases cited and largely relied upon by appellant.

In re Lenox, 2 F.(2d) 92, is a decision by the District Court for the Western District of Pennsylvania. In this case it was held that the distribution of a surplus must be governed by general principles of equity; that a creditor whose debt was scheduled by the bankrupt, but not paid, is entitled in equity to payment from such fund; that the bankruptcy law is predicated upon insolvency, does not contemplate a surplus, and makes no provision for a return of one to the bankrupt; that the provision of section 57n that "claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication" is a provision for the benefit of creditors, not for the benefit of the bankrupt; that distribution of such a surplus is not made under the provisions of the Bankrupt Act, and therefore no provision of that act is applicable. In re Lane (D. C.) 125 F. 772; In re Atlantic Construction Co. (D. C.) 228 F. 571; and Nassau Smelting & Refining Works, Ltd., v. Brightwood Bronze Foundry Co., 265 U. S. 269, 44 S. Ct. 506, 68 L. Ed. 1013, all compromise cases, are cited in support of this latter holding. These cases will receive consideration later in this opinion. We think the view that the disposition, upon reopening, of a surplus resulting from the discovery of additional assets of the bankrupt estate, is not made under the provisions of the Bankrupt Act, cannot be sustained. The trustee applies the newly discovered assets to the payment pro tanto, or in full, of the proved claims and costs of administration, and if, by chance, any surplus remains,

such disposition is made as justice may require.

"Except by necessary implication, the Bankruptcy Act makes no provision for the disposal of a surplus of the property surrendered remaining after payment of the costs of administration and all creditors in full, but in the exercise of its equity jurisdiction it is the duty of the court to return it to the bankrupt. Johnson v. Norris (C. C. A.) 190 F. 459, L. R. A. 1915B, 884. As this is a part of the administration of the bankrupt's estate, the returning of the surplus is a proceeding in bankruptcy." Berl et al. v. Crutcher (C. C. A.) 60 F.(2d) 440, 444.

▪ Newly discovered assets, upon reopening, form a part of the bankrupt estate. If, at the close of administration and distribution, a surplus results, the character of that surplus is not changed. It is still a part of the bankrupt estate. A decision contrary to that of In re Lenox was rendered later in the same district. In re Burns and Burt, 18 A. B. R. (N. S.) 481.

The court in Johnson v. Norris directed the payment of interest on interest-bearing claims, out of surplus, from the date of the filing of the petition until the debts were paid, before any part of the surplus should be returned to the bankrupt. The claims were those that had been proved within the statutory period. Following is the syllabus by the court: "Voluntary Bankruptcy—Surplus. When there is a surplus of a voluntary bankrupt's estate, after the payment of all proved claims and interest thereon to the date of the filing of the petition, such surplus should be applied first to the payment of the interest accruing on the claims subsequent to the filing of the petition, and the remainder only returned to the bankrupt."

And this from the body of the opinion: "Unquestionably, a surplus after paying in full all debts, including all interest due on the debts accruing before and subsequent to the filing of the petition, would equitably belong to the bankrupt, and no statute would be needed to authorize the court to direct its payment to the bankrupt."

This rule is expressly followed in Re Hopkins (D. C.) 15 F.(2d) 206, and may be said to have found general acceptance. In re Silk, supra, and cases cited.

We have already adverted to the cases cited in support of the equity jurisdiction of the bankruptcy court. It is contended that this court, in Larson v. First State Bank, supra, has, in effect, overruled Chapman v.

Whitsett. An examination of the opinion in the former case does not support that contention. The judgment of the district court in allowing an unsecured claim, filed after the statutory period, was sustained upon the ground that the objecting creditors and the trustee were estopped by their inaction, for a period of more than two years after adjudication, in obtaining an order avoiding a preference, which order, made after expiration of the time for filing claims, provided, as a condition, that the creditor from whom the preference was taken should file his claim as unsecured. The case contains no hint that the limitation of section 57n should not prevail under normal conditions.

In Re Peck, supra, it was suggested that there might be exceptional cases which would not fall within the statute. Among them are those in which no assets were scheduled by the bankrupt, and no claims were proved within the limitation period. Reference is made to In re Pierson (D. C.) 174 F. 160, and Williams v. Rice (C. C. A. 5) 30 F.(2d) 814, 815. In the Pierson Case application was made by the bankrupt to reopen the administration of the estate under section 2 of subdivision 8 of the Bankruptcy Act, 11 USCA § 11 (8), upon the ground that there were newly discovered assets in the form of land, the title to which the bankrupt did not know he held when his petition was filed. Judge Learned Hand states his problem thus: "There is only one difficulty in the way of the relief asked, which is that under the statute it is long since too late to prove claims. Had any claims been proved, and had there originally been actual administration of any assets, then only those claims which had been proved could now come in. Re Shaffer (D. C.) 104 F. 982. Here no claims were filed, for the very good reason that there was then no use in proving them. Unless they may now be proved, the bankrupt cannot do what he honestly wishes, which is to remedy the effect of his mistake."

He concludes that section 2 of the act confers upon him power to reopen under the facts stated; but that, unless he could allow claims then to be proved, subdivision 8 of that section would be rendered of no effect, and the reopening a mere formality. He resolved this apparent conflict between two sections of the Bankruptcy Act by allowing claims generally to be proved, as an interpretation of what the reasonable intention of Congress must have been.

Williams v. Rice, supra, presented an identical situation. The rule announced in the Pierson Case was adopted and the same conclusion reached. But the court in passing had this to say: "Section 57n, limiting the time for proving claims, is intended primarily to require creditors to prove their claims promptly, in order that the estate may be closed without undue delay. If a creditor is negligent, he may not file his claim after the limitation of the statute has run, but a new situation arises whenever the bankrupt, although unwittingly, has deceived the creditors, and he is the only one asserting an adverse interest in the assets."

Neither of the cases last cited support appellant's position under the facts before us. There are also cases holding that, where the delay in proving claims is caused by the fraud of the bankrupt, in misstating facts in his schedule, and in concealment of assets, the estate may be reopened, and claims proved beyond the limitation period of the statute, despite objection by the bankrupt. In re Towne et al. (D. C.) 122 F. 313; In re Paine (D. C.) 127 F. 246. Contra, In re Meyer (D. C.) 181 F. 904. However, the language of Judge Swan in Re Silk, supra, has application here: "For present purposes we may lay aside any question of fraud on the part of the bankrupt as an inducing cause of the creditors' delay in proving their claims. [Citing cases.] In the case at bar the bankrupt admittedly acted in good faith. Under such circumstances the statute affords no basis for favoring a creditor merely because he was not negligent. Section 57n (11 USCA § 93 (n) contains no such exception. See In re Sanderson, 160 F. 278 (D. C. Vt.)."

In this case there is no contention that the bankrupt acted fraudulently, or with intent to conceal assets, in failing to schedule the insurance policy upon the life of its president. That asset, contingent in nature, and uncertain of realization, may well have escaped notice.

A number of decisions in composition cases have been urged in support of appellant's position. Among them are In re Lane (D. C.) 125 F. 772; In re Atlantic Construction Co. (D. C.) 228 F. 571, 572; and Nassau Smelting & Refining Works v. Brightwood Bronze Foundry Co., 265 U. S. 269, 44 S. Ct. 506, 68 L. Ed. 1013.

Section 12a of the Bankruptcy Act provides that "a bankrupt may offer, either before or after adjudication, terms of composition to his creditors," and further:

12b. "An application for the confirmation of a composition may be filed in the court of bankruptcy after, but not before, it

has been accepted in writing by a majority in number of all creditors whose claims have been allowed, which number must represent a majority in amount of such claims, and the consideration to be paid by the bankrupt to his creditors, and the money necessary to pay all debts which have priority and the cost of the proceedings, have been deposited in such place as shall be designated by and subject to the order of the judge."

12e. "Upon the confirmation of a composition, the consideration shall be distributed as the judge shall direct, and the case dismissed. Whenever a composition is not confirmed, the estate shall be administered in bankruptcy as herein provided." (11 USCA § 30 (a, b, e.)

It will be observed that section 57n forbids the proving of claims against "a bankrupt estate" subsequent to six months after adjudication. In Re Atlantic Construction, Co., supra, Judge Hand says: "Section 57n seems to me to have no application whatever to the situation; it concerns only proving claims against the bankrupt estate, and that is quite irrelevant to an offer to the bankrupt's creditors."

In Cumberland Glass Mfg. Co. v. DeWitt & Co., 237 U. S. 447, 35 S. Ct. 636, 59 L. Ed. 1042, the Supreme Court holds that: "The effect of a composition proceeding as provided in the Bankruptcy Act is to substitute that proceeding for the bankruptcy proceeding and in a measure to supersede the latter, and, when the composition is confirmed, to reinvest the bankrupt with all his property free from claims of his creditors."

This also is the holding in Nassau Smelting & Refining Works v. Brightwood Bronze Foundry Co., 265 U. S. 269, 44 S. Ct. 506, 507, 68 L. Ed. 1013, and the language of the opinion in that case must be confined to the nature of the proceeding under consideration. Mr. Justice Brandeis, among other things, says:

"Composition is a settlement by the bankrupt with his creditors. In a measure, the composition supersedes, and is outside of, the bankruptcy proceedings. * * * Where the assets have passed to the trustee pursuant to the adjudication, they are revested in the bankrupt. * * *

"The language of the act tends to support the contention that proof within the year is not essential to participation in the benefits of the composition. Section 57n declares that 'claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication.' There is no 'bankrupt estate' where there is no adjudication, and even where there is an adjudication, the proof made is not against the 'bankrupt estate,' if a composition follows."

After holding that under this offer made within three months of the adjudication no reason was shown why it should be limited to scheduled creditors who should prove within the year, the opinion closes with this significant warning: "Where the offer of composition is not made until after the expiration of the year the question may be different."

It thus appears that the great weight of authority and reason is to the effect that, absent exceptional cases of the nature of those to which reference has been made, claims not proved within six months after adjudication cannot be proved against and paid out of a bankrupt estate. In its petition the bankrupt herein scheduled substantial assets, and a dividend of 36.89 per cent. was paid to creditors who proved their claims within the statutory period. It is apparent that, with the addition of appellant's claim, a substantial dividend could have been realized. Why appellant failed to prove, whether from negligence, or from fear of the defense suggested in the bankrupt's counterclaim, does not appear. There is here present no suggestion of fraud on the part of the bankrupt. The case is free from all considerations which have led to allowance of claims after the statutory period, under exceptions that have received general recognition. As has been said, in the normal administration of a bankrupt estate, any surplus remaining in the custody of the trustee should go to the bankrupt without the necessity of a statutory provision to that effect.

It follows that the order and judgment of the District Court should be affirmed, and it is so ordered.