### RICKETTS v. FIRST TRUST CO. OF LINCOLN, NEB.

### No. 10068.

Circuit Court of Appeals, Eighth Circuit.

Oct. 29, 1934.

Rehearing Denied Dec. 6, 1934.

Perry W. Morton and R. A. Boehmer, both of Lincoln, Neb., for appellant.

Frank D. Williams, of Lincoln, Neb. (Earl Cline, of Lincoln, Neb., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order of the District Court reversing an order of the referee in bankruptcy which required appellee to turn over to appellant certain alleged assets of the bankrupt Lincoln Trust Company. Appellant, trustee in bankruptcy, filed with the referee his petition for an order requiring appellee to turn over to appellant the sum of $1,947.75, alleging that it was an asset of the bankrupt estate, of which the trustee was entitled to immediate possession.

The Lincoln Trust Company, before adjudication in bankruptcy, was engaged in business as a trust company, making real estate loans and selling securities to the public. The Lincoln Safe Deposit Company, an affiliate, was engaged in the same kind of business and is also bankrupt. Appellant is trustee in bankruptcy of both these companies. Some of the loans here involved were made by the Lincoln Safe Deposit Company, but as the Lincoln Trust Company became the owner of them before bankruptcy, and there is no difference in the character of the securities involved, all loans will be treated as though made directly by the Lincoln Trust Company.

Two different methods were used in the handling or negotiation of the loans here involved. In one, the bankrupt would make a loan, taking a note or bond and a mortgage securing same to itself. These original securities were kept by the bankrupt in its own name and were in its possession until bankruptcy. The bankrupt would then issue and

sell to investors so-called "certificates of participation," by the terms of which an equitable interest in the original note and mortgage to the extent of a designated amount was assigned to the purchaser. These certificates of participation bore interest at a lower rate than the original notes or bonds, and provided for no penalty interest. They were not obligations of the bankrupt, but were made payable only "when collection is made." Neither in the original note, bond, nor mortgage, was any reference made to participation certificates. This deferred differential in interest was carried on the books of the bankrupt as a "potential asset." When installments were paid on the original note or bond, they were credited on this record and set up as a profit of the bankrupt, and the money was put into the general account of the company. Expenses of the transaction were paid out of the general funds the same as other operating expenses of the bankrupt.

The other method of handling was the taking of "companion" or commission notes. These notes were executed by the borrowers at the same time as the principal notes and mortgages, and were secured by the same mortgages as the principal note. These notes were payable in installments on the interest-paying dates of the principal loan.

On adjudication in bankruptcy, a receiver was appointed who applied both to the District Court of the United States, for the District of Nebraska, Lincoln Division, and to the referee in bankruptcy for instructions, and prayed that authority be granted him to apply to the district court of Lancaster county, Neb., for an order transferring the trusteeship of all the bankrupt's loans to some suitable successor trustee. On these applications, orders were entered, granting authority to make such application to the state court "upon the express condition, however, that the bankruptcy court shall retain jurisdiction over the said successor trustee and the said trust properties for the purpose of ascertaining the interest of the bankrupt estate, if any, in said trust property, and making appropriate provision to protect such interest." Upon petition filed, the state court entered a decree appointing the First Trust Company of Lincoln, Neb., appellee herein, successor trustee, with recognition of the right and power of the United States District Court and the referee in bankruptcy to retain and exercise "jurisdiction for the purpose of an accounting, for the fixing of any lien, right, title or interest, if any, that the bankrupt estates may have in the trust property and for the purpose of making appropriate orders for the protection of said bankrupt estates." An order was subsequently made by the bankruptcy court, authorizing the trustee in bankruptcy to deliver the books, records, and all other papers in connection with the loans to the appellee, with a similar reservation of jurisdiction as contained in the decree of the state court.

Appellee, as successor trustee, has collected the full rate of interest due on the original notes and mortgages, and has paid over to investors only the amounts called for by the participation certificates, and has retained the difference in its possession. The purpose of the proceeding below was to compel the appellee to turn over to the trustee in bankruptcy the whole sum collected and, retained by it, being the difference between collections on original securities and the amounts paid to the holders of participation certificates, and also to compel appellee to turn over the amount of commission notes collected by it, the former aggregating $1,887.75 and the latter $60. The referee entered the order as prayed for, but upon review the order was vacated and reversed, and this appeal is from that order.

The trustee of the estate of a bankrupt, upon his appointment and qualification, is, subject to certain exceptions not here material, vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt to all property which, prior to the filing of the petition, he could by any means have transferred, or which might have been levied upon and sold under judicial process against him. Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565, as amended by Act of Feb. 5, 1903, c. 487, § 16, 32 Stat. 800, and Act of May 27, 1926, c. 406, § 16, 44 Stat. 667, title 11, U. S. C., § 110 (11 USCA § 110).

In the petition to the state court, filed by the receiver or trustee, it is alleged that, "The plaintiff as receiver and the trustee in bankruptcy, when elected, does not have the means or authority to properly safeguard the interest of said investors, so that it is imperative that a new trustee be appointed forthwith to take over said duties."

The bankruptcy court, in its order on the petition, found: "That the bankrupt is trustee of a large number of mortgage loans and has active duties to perform as such trustee in connection with the servicing of said loans, collection of interest and principal, foreclosing defaulted mortgages and handling property acquired thereunder, which work must be promptly and efficiently han-

dled in order to prevent the impairment of the security and irreparable injury and great financial loss to the many thousand holders of securities issued thereunder, *and also injury and loss to the bankrupt estate on account of the inability of the bankrupt estate to obtain reimbursement for advances which it has heretofore made on certain of said loans or on account of other interests that the bankrupt estate may have therein.* (Italics supplied)"

The petition in the bankruptcy court for leave to apply to the state court for an order appointing a successor trustee contains the following allegation: "The bankrupt estate does not have sufficient money to properly service the said trust properties and in the opinion of your receiver it would not be expedient for it to attempt to do so."

The decree of the state court found and adjudged that the bankrupts "are without means to continue to perform the various trusts and functions heretofore performed by them," and that the trustees "had active duties to perform."

Not only was it represented by the receiver and trustee in bankruptcy that the officers of the bankrupt would be unable to perform the duties and accept the responsibilities that would follow acceptance of the trust, but it was so adjudicated by both the bankruptcy court and the state court. Renunciation and abandonment of the trust followed, but it is claimed that the abandonment was not complete and unequivocal because the bankruptcy court still had jurisdiction to ascertain what, if any, interest the estate had in the trust property, and to make appropriate provision to protect it.

Nothing became due to the holders of certificates of participation until the bankrupt should make collection on the original notes. Each certificate provided "that said Lincoln Trust Company retains the legal title to said note and mortgage in trust for the use and benefit of the holders of said Participation Certificates, according to their several interests." The bankrupt, it will be observed, held the legal title to the mortgage indebtedness in trust for the holders of the participation certificates. It agreed to collect and enforce payment of the note and mortgage, to distribute the proceeds equally and ratably among the holders when collected, to pay the investors' interest (when collected), at the rate specified in the certificates, and to foreclose in many cases.

The Lincoln Trust Company made no charge as such for collecting and distributing principal or interest, and the investors were never called upon to pay any expense of the company, but the company paid the certificate holders the amount of interest called for without making any deduction for the cost of collection. The differential in interest, though placed upon the books as a potential asset, was not an asset until the money was collected by the company; in fact, the original borrowers had a right to pay off the loan before it was due, and in some cases the borrower might not pay any interest at all. In various instances it foreclosed on the security and took title thereto in its own name, and it had issued certificates of title and agreed to hold property in trust for the beneficial owners. It undertook to manage and dispose of this property, and divide the net proceeds among the beneficial owners. It had also issued numerous trustee receipts to holders of defaulted securities, whereby the bankrupt agreed as trustee to foreclose the securities and hold and manage the property received therefrom, and divide the proceeds among the respective owners.

It is clear that the office and duty of trustee with respect to holders of certificates of participation was charged with the duty of rendering service and paying expenses, and this is likewise true as to the commission notes, although no trust is involved as to them. The duties of trustee were rejected and abandoned by the trustee in bankruptcy because these duties could not be promptly and efficiently performed, because the bankrupt estate was without sufficient money to properly service the trust properties, and because, in the opinion of the receiver, "it would not be expedient for it to attempt to do so," and also because retaining the trusteeship would result in "injury and loss to the bankrupt estate on account of the inability of the bankrupt estate to obtain reimbursement for advances which it has heretofore made on certain of said loans or on account of other interests that the bankrupt estate may have therein."

The duties of the trustee were inseparably connected with the differential interest. The claim which the trustee in bankruptcy urges is not for services rendered by the bankrupt before adjudication, but is a claim for interest earned after bankruptcy. The bankrupt had no title to the note and mortgage, except the naked legal title which it held in trust for the holders of the certificates, and the successor trustee now holds that legal title in trust for the holders of the participation certificates. There was transferred to the successor trustee not only the note and

mortgage, but the office of trustee. Having rejected and refused to perform the services, duties, and responsibilities of the trusteeship, or to bear the expenses connected therewith, the appellant insists, nevertheless, that he is entitled to the emoluments thereof. It is clear that the successor trustee must account to the certificate holders for the full amount due them, and if it must now account to the appellant for the differential in interest, then, clearly, the appellant will be collecting for the services which the appellee is in fact rendering.

■ The trustee was not bound to accept whatever property interest the bankrupt may have had in these securities because the duties to be performed and the expenses to be advanced in connection therewith rendered the property onerous and unprofitable. In his judgment, and in the judgment of the bankruptcy court, this property was a burden instead of a benefit to the estate, and for that reason he elected, with the approval of the court, not to accept it.

It is to be noted that the appellant has not asked for an accounting, but seeks to recover from the successor trustee, who has performed the services, advanced the expenses, and assumed the full responsibility as trustee, the entire proceeds of its operations to date. A court of bankruptcy "is a court of equity in the sense that 'its judge and referees, in adjudging the rights of parties entitled to their decision, are governed by the principles and rules of equity jurisprudence.'" Burton Coal Co. v. Franklin Coal Co. (C. C. A. 8) 67 F.(2d) 796, 797; Larson et al. v. First State Bank of Vienna, S. D. (C. C. A. 8) 21 F.(2d) 936; In re Rochford (C. C. A. 8) 124 F. 182. It is axiomatic that he who seeks equity must do equity. Broatch v. Boysen (C. C. A. 8) 236 F. 516; City of Columbus v. Mercantile Trust Co., 218 U. S. 645, 31 S. Ct. 105, 54 L. Ed. 1193. Appellant has made no offer to reimburse appellee for the expense it has incurred, nor to compensate it for services rendered. He has declined to perform the duties connected with the trust; he has secured the appointment of a new trustee to perform the services required, but notwithstanding this repudiation of the burdens of the bankrupt's contract, he insists on the benefits arising therefrom. In Gibson v. Kansas City Refining Co. (C. C. A. 8) 32 F.(2d) 658, 665, in an opinion by the late Judge Kenyon, it is said: "There is another principle announced by this court in Sioux City Terminal R. & W. Co. v. Trust Co., supra [(C. C. A.) 82 F. 124], separate and distinct from the question of estoppel, and that is the equitable one, that he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."

The trustee in bankruptcy having elected to abandon the office of trustee for certificate holders, with its burdens, cannot under this cardinal principle of equity take the benefits arising from the repudiated trusteeship.

The order appealed from is therefore affirmed.